United States Court of Appeals,

Fifth Circuit.

No. 91–4860.

Barbara HOLLIER, etc., et al., Plaintiffs,

v.

UNION TEXAS PETROLEUM CORP., Defendant–Appellee,

v.

CERTAIN UNDERWRITERS AT LLOYDS LONDON, Defendant–Appellant,

and

Petroleum Personnel, Inc., Intervenor–Plaintiff–Appellant.

Sept. 23, 1992.

Appeal from the United States District Court for the Western District of Louisiana.

Before POLITZ, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

David Hollier died in the course of his employment with Petroleum Personnel, Inc. (PPI), while assigned to test a well owned by Union Texas Petroleum Corp. (Union Texas) and located on a fixed platform on the outer continental shelf. Hollier and his partner were to perform certain tests on the well several times each day for seven days. Since there was no place to sleep or eat on the well platform, Hollier slept and ate his meals on a jackup vessel that rested next to the platform. One day, as he was crossing from the vessel to the platform, he slipped between the boat and the platform, was crushed, and then drowned.

His widow and children brought an action under the Death on the High Seas Act (DOHSA), maritime law, the Outer Continental Shelf Lands Act (OCSLA), and Louisiana law against Union Texas and G & B Marine Transport (owner and operator of the vessel). Union Texas filed a third-party action for indemnity against Hollier's employer, PPI, and PPI's insurer, Certain

Underwriters at Lloyds, London (Lloyds). The PPI–Union Texas contract contained a mutual indemnity clause. The primary injury claim has been settled, so only the third-party indemnity issue remains.

This type of contractual indemnity provision is valid under maritime law but prohibited by Louisiana law. *See* La.R.S. 9:2780. After a bench trial on stipulated facts, the district court found that maritime law did not apply. 765 F.Supp. 330 (W.D.La.1991). It then enforced the Texas choice-of-law provision in the Union Texas–PPI contract and entered judgment in favor of Union Texas.[1] Lloyds and PPI appeal. We hold that Louisiana law applies through OCSLA, 43 U.S.C. §§ 1331–1356, and reverse.

II.

OCSLA provides, in relevant part, as follows:

> To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf....

43 U.S.C. § 1333(a)(2)(A). Subsection (a)(1) explicitly places "artificial islands, and all installations and other devices permanently or temporarily attached to the seabed" under OCSLA's coverage. *Id.* § 1333(a)(1).

This court has articulated the following test to determine whether to apply adjacent state law as surrogate federal law under OCSLA:

---

[1]Lloyds is obligated to indemnify Union Texas under Texas law. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 127.001–127.005.

(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

*Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 459 (5th Cir.1992) (quoting *Union Tex. Petroleum Corp. v. PLT Eng'g,* 895 F.2d 1043, 1047 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990)). Only the first two factors are in dispute in this case. Because we find OCSLA situs and no independent application of maritime law, we find that Louisiana law applies and invalidates the indemnity provision.

A.

This accident took place on a situs covered by OCSLA. Hollier was killed while transferring from a stationary jackup vessel to a well platform. It is well established that a platform is an "artificial island" within the meaning of OCSLA. *See Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 361–66, 89 S.Ct. 1835, 1840–42, 23 L.Ed.2d 360 (1969). A jackup boat, however, is generally considered to be a vessel, not an artificial island. *See Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1087 (5th Cir.1990) (commenting that en banc review would be necessary to treat special purpose vessels as artificial islands), *cert. denied,* —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991).

Union Texas relies upon *Offshore Logistics v. Tallentire,* 477 U.S. 207, 217–19, 106 S.Ct. 2485, 2491–92, 91 L.Ed.2d 174 (1986), for the proposition that OCSLA does not apply to platform workers injured on the high seas.[2] Hollier was not killed on the high seas, however. While the decedents in *Offshore Logistics* were injured miles away from any platform, Hollier was in physical contact with the platform at the time of his injury.

---

[2]In *Offshore Logistics,* the Court tried to draw a sharp line between injuries on the high seas and those on an outer continental shelf structure: "The Act [should] not be construed to affect the high seas which cover the Continental Shelf." 477 U.S. at 218, 106 S.Ct. at 2492. Nevertheless, on the next page the Court recognized that OCSLA had been construed to apply to some accidents that occurred near, but not on, an outer continental shelf structure. *See id.* at 219, 106 S.Ct. at 2492.

B.

Union Texas contends that, as the contract is maritime, federal law applies of its own force. In the context of oil and gas exploration on the outer continental shelf, a contract obligation is considered maritime only if it has a sufficient maritime nexus apart from the fact that the situs of performance is in navigable waters. *Laredo Offshore Constr. v. Hunt Oil Co.,* 754 F.2d 1223, 1230 (5th Cir.1985). These well testing services have no maritime nexus apart from the location of the wells at sea. *Cf. Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 955 (5th Cir.1988) (wireline services not inherently maritime).

Noting that we apply maritime law when an injury occurs during the performance of a maritime obligation under a mixed maritime/non-maritime contract, *see id.,* Union Texas contends that Hollier was killed in the performance of a maritime obligation, i.e., the act of stepping from the jackup boat to the platform. We disagree. Every person who performs work on a platform must, in fact, step onto it. We decline to find that this act constitutes a separable maritime obligation in a contract to perform services on a platform.

In determining whether a contract is maritime, this court in *Davis & Sons, Inc. v. Gulf Oil Corp.,* 919 F.2d 313, 316 (5th Cir.1990), outlined the following test:

> We consider six factors in characterizing the contract: (1) what does the specific work order in effect at the time of the injury provide? (2) what work did the crew assigned under the work order actually do? (3) was the crew assigned to work aboard a vessel in navigable waters[?] (4) to what extent did the work being done relate to the mission of that vessel? (5) what was the principal work of the injured worker? and (6) what work was the injured worker actually doing at the time of the injury?

*See also Dominque v. Ocean Drilling & Exploration Co.,* 923 F.2d 393, 395–96 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992).

The specific work order in this case was for well testing, a non-maritime service. Hollier was assigned to the well testing crew and performed well testing and some paperwork, neither of which

is maritime activity. He performed minimal paperwork aboard the vessel but accomplished the majority of his tasks on the platform. The mission of the vessel was to serve as a housing unit for the well testers, so Hollier's work did relate to that mission. His principal work was well testing. Finally, at the time of the accident, Hollier was crossing from the vessel to the platform in order to perform well testing. These factors indicate that the contract is non-maritime.

Since this accident took place on an OCSLA situs and maritime law does not apply to this non-maritime contract, Louisiana law applies as surrogate federal law under OCSLA. The mutual indemnity provisions are unenforceable under Louisiana law; accordingly, PPI has no duty to indemnify Union Texas.

### III.

The Union Texas/PPI contract contained a provision selecting Texas law to govern contract disputes. Union Texas argues that we should enforce this provision and apply Texas law, which permits the indemnity clause at issue. This court, however, rejected the enforcement of a maritime choice-of-law provision in *Matte v. Zapata Offshore Co.,* 784 F.2d 628, 631–32 (5th Cir.), *cert. denied,* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986). We held that the choice-of-law provision violated both Louisiana and federal public policy as expressed in OCSLA, "which seeks to apply the substantive law of adjacent states to problems arising on the Shelf." *Id.* at 631. Our reasoning in *Matte* controls our decision in this case. We decline to apply Texas law to the Union Texas/PPI contract in place of Louisiana law.

The judgment of the district court is REVERSED and RENDERED.