IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2008

Charles R. Fulbruge III
Clerk

No. 07-31019

GRAND ISLE SHIPYARD INC; GRAY INSURANCE COMPANY

Plaintiffs-Appellees

V.

SEACOR MARINE, LLC,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before GARZA and DENNIS, Circuit Judges, and MILLS,[*] District Judge.

MILLS, District Judge:

Seacor Marine, LLC appeals the district court's grant of summary judgment to appellees Grand Isle Shipyard and Gray Insurance Company ("Gray") in the instant declaratory judgment action. We hold that the district court erred in concluding that the Outer Continental Shelf Lands Act, 43 U.S.C. 1331, et seq. ("OCSLA"), applies to an accident involving an offshore platform worker being transported by a vessel on the high seas. The district court

_____

[*]Chief Judge of the Northern District of Mississippi, sitting by designation.

1

therefore erred in applying the provisions of the Louisiana Oilfield Indemnity Act, LA. REV. STAT. ANN. § 9:2780A ("LOIA") as surrogate federal law under OCSLA to invalidate the indemnity agreement in this case. Concluding that general maritime law applies instead, we vacate the district court's order invalidating the indemnity agreement and remand for additional proceedings.

## FACTS AND PROCEEDINGS BELOW

This declaratory judgment action involves an indemnity dispute between Grand Isle and Seacor, two contractors of BP American Production Company ("BP"). Grand Isle's contracting duties involved the repair and maintenance of BP's offshore platforms, while Seacor's duties involved the transporting of workers for BP and its contractors. The indemnity dispute in this case arises from an April 2005 incident in which Denny Neil, a Grand Isle employee, was injured in a fall onboard the M/V SEA HORSE IV, a vessel owned and operated by Seacor. At the time of the accident, the SEA HORSE IV was transporting Neil from his work platform to the residential platform which contained his living quarters. Deposition testimony indicated that the vessel was in close proximity to the residential platform at the time of the accident, but it is undisputed that neither Neil nor the SEA HORSE IV were in physical contact with the platform when the accident occurred.

Neil filed suit against Seacor in the U.S. District Court for the Southern District of Texas, asserting a claim for vessel negligence under § 905(b) of the Longshore and Harbor Worker's Compensation Act ("LHWCA"). Seacor tendered its defense and indemnity to Grand Isle; Seacor also claimed the benefit of insurance provided by Grand Isle's insurer Gray. On March 17, 2006,

Grand Isle and Gray filed suit in the U.S. District Court for the Eastern District of Louisiana, seeking a declaratory judgment that: (1) Grand Isle is not contractually obligated to defend and indemnify Seacor; and (2) Seacor is not entitled to insurance coverage from Gray.

Grand Isle and Gray subsequently filed motions for summary judgment in which they argued (1) that by virtue of OCSLA, the LOIA applies as surrogate federal law in this case, thus invalidating the contractual indemnity provision at issue here; and (2) that § 905(b) of the LHWCA is applicable to the case and prohibits enforcement of the indemnity provision. Seacor filed its own cross motion for summary judgment, maintaining that general maritime law governs the dispute and noting that nothing in that law prohibits the indemnity agreement at issue here. On September 26, 2007, the district court issued a summary judgment order in which it held that Louisiana law does apply in this case and that the LOIA bars Seacor from asserting its indemnity and insurance claims against Grand Isle and Gray. The district court accordingly granted Grand Isle and Gray's motions for summary judgment, and Seacor timely appealed the ruling to this court.

## ANALYSIS

This case presents an issue of law of some significance in our maritime jurisprudence. The primary legal issue on appeal involves whether Louisiana state law, in particular the LOIA, applies to void the indemnity obligations contained in the contract between BP and Grand Isle. BP included virtually identical indemnity provisions in its contracts with Grand Isle and Seacor, and neither party disputes that BP sought thereby to impose reciprocal indemnity

3

obligations among its contractors.[1] The question in this case is, instead, whether BP's clear indemnity provision is nevertheless invalidated by the equally clear provisions of the LOIA.

In enacting the LOIA, the Louisiana legislature explained that its intent was "to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee." LA. REV. STAT. ANN. § 9:2780A. The Supreme Court of Louisiana has observed that the LOIA "arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract." Fontenot v. Chevron U.S.A., Inc., 676 So. 2d 557, 563 (La. 1996).

The parties agree that if the LOIA applies, then this law would serve to

---

[1]Seacor seeks indemnity from Grand Isle under paragraph 14.07 of Grand Isle's contract with BP, which provides that:

> Contractor agrees to defend, indemnify, release and hold company's other contractors harmless in accordance with the provisions of this Article 14 (to the extent such other Contractors execute cross indemnification provisions substantially similar to those contained in this section 14.07) from and against all claims, liabilities, damages, and expenses (including without limitation attorney's fees and other costs of defense), irrespective of insurance coverages for the following:14.07.01(i) all injuries to, deaths, or illnesses of persons in contracted group CG: . . . whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of company's other contractors or any other entity or person or the unseaworthiness of any vessel.

void the indemnity provision at issue in this case. It is well settled that for Louisiana law to apply as surrogate federal law under OCSLA, the three conditions established by this court in Union Texas Petroleum Corp. v. PLT Engineering, Inc., 895 F.2d 1043 (5th Cir. 1990) must be met. These three conditions are that (1) the controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with federal law.

We conclude that the OCSLA situs requirement is not met in this case, and it is accordingly unnecessary to consider whether the remaining two PLT Engineering conditions are met. Section 1333(a)(1) of OCSLA sets forth a statutory situs requirement, as follows:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, that mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

In the 2002 decision of Demette v. Falcon Drilling Co., Inc., 280 F.3d 492 (5th Cir. 2002), we comprehensively examined the scope of the § 1333(a)(1) situs requirement for the first time, observing that:

> [T]he OCSLA draws important distinctions between the two categories of artificial islands, installations, and other devices. Each category is defined by the purpose of the device-the former,

5

extraction of resources; the latter, transportation of resources. The former also includes the phrase, "which may be erected [on the OCS]," while the latter does not. Conversely, the latter contains the phrase, "other than a ship or vessel," while the former does not.

Demette, 280 F.3d at 497.

In accordance with these observations, we held in Demette that:

We incorporate these distinctions into the following rule:
The OCSLA applies to all of the following locations:
(1) the subsoil and seabed of the OCS;
(2) any artificial island, installation, or other device if
(a) it is permanently or temporarily attached to the seabed of the OCS, and
(b) it has been erected on the seabed of the OCS, and
(c) its presence on the OCS is to explore for, develop, or produce resources from the OCS;
(3) any artificial island, installation, or other device if
(a) it is permanently or temporarily attached to the seabed of the OCS, and
(b) it is not a ship or vessel, and
(c) its presence on the OCS is to transport resources from the OCS.

Id.

Based on Demette, it is apparent that the SEA HORSE IV does not qualify as an OCSLA situs within the meaning of § 1333(a)(1).[2] That is, the vessel does not qualify as either "the subsoil and seabed of the [OCS]," an "artificial island," or an "installation . . . permanently or temporarily attached to the seabed."

---

[2]One commentator has expressed his view that Demette gave overly broad treatment to § 1333(a)(1), arguing that the situs provision "cannot be read to delimit the coverage of the entire OCSLA." David W. Robertson, The Outer Continental Shelf Lands Act's Provisions on Jurisdiction, Remedies, and Choice of Law: Correcting the Fifth Circuit's Mistakes, 38 J. Mar. L. & Com. 487, 502 (Oct. 2007). Regardless of whether this view has merit, Demette represents the law of this circuit, and our task here is simply to apply it.

Indeed, as to the latter category, § 1333(a)(1) specifically excludes "a ship or vessel" used for "transport[ing] resources from the OCS" from being a potential OCSLA situs.

In holding that the situs requirement was met in this case, the district court did not apply our holding in Demette, instead relying upon older authority which we conclude, for reasons discussed below, to be factually distinguishable from this case.[3] The district court likewise did not apply the Supreme Court's analysis in Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207 (1986), which we deem to be controlling in this case. In Tallentire, two platform workers were killed in a crash on the high seas of a helicopter which had been transporting them from the offshore drilling platform where they worked to their home base in Louisiana. Tallentire, 477 U.S. at 209. The survivors of the workers argued that they were entitled to damages based on the Louisiana Wrongful Death Statute, which they asserted was applicable either by its own terms or as surrogate federal law under OCSLA. Id.

The Supreme Court in Tallentire concluded that OCSLA did not apply in that case, writing that:

> admiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. See Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that

---

[3]We acknowledge that the district court faced a difficult task in applying our OCSLA jurisprudence. Indeed, we have previously "expressed our frustration with the inconsistency of our case law" in this context. Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1523 n. 8 (5th Cir. 1996)(citations omitted).

helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an "island," albeit an artificial one, to the shore.

Id. at 218-19. Significantly, the Supreme Court in Tallentire rejected the notion that the status of the decedents as platform workers should render OCSLA applicable to what was otherwise a maritime accident:

> The character of the decedents as platform workers who have a special relationship with the shore community simply has no special relevance to the resolution of the question of the application of OCSLA to this case. . . . We do not interpret § 4 of OCSLA, 43 U.S.C. § 1333, to require or permit us to extend the coverage of the statute to the platform workers in this case who were killed miles away from the platform and on the high seas simply because they were platform workers. Congress determined that the general scope of OCSLA's coverage, like the operation of DOHSA's remedies, would be determined principally by locale, not by the status of the individual injured or killed.

Id.

In concluding that OCSLA applies in this case, the district court relied upon our decision in PLT Engineering. The district court placed particular emphasis upon our observation that the situs requirement had been met in that case because "the 'locations where substantial work pursuant to the contract was done were covered situses.'" Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, No. 06-1405, 2007 WL 2874808 at *3 (E.D. La. 2007)(quoting PLT Engineering, 895 F.2d at 1047). Considered in its entirety, our holding in PLT Engineering does not support the result reached by the district court in this case. PLT Engineering was a breach of contract case in which we concluded that OCSLA applied to a dispute involving work on an undersea gathering line. PLT Engineering, 895 F.2d at 1049. We reached this conclusion in spite of the fact

8

that the work at issue in PLT Engineering was performed by vessels and divers in the ocean, not on a platform. Id. In explaining our conclusion that OCSLA nevertheless applied, we wrote that:

> In the first place, the gathering line exactly fits the statutory definition of an "other device[] permanently or temporarily attached to the seabed ... erected thereon for the purpose of ... developing, or producing resources therefrom." 43 U.S.C. § 1333(a)(1). In addition, the gathering line was buried beneath the ocean floor. It was connected to a platform at one end. It was connected to a transmission line at the other. The locations where the substantial work was done were covered situses-the subsoil or seabed; an artificial island; and an installation for the production of resources. Thus the first condition is met.

Id. at 1047-48. We thus noted several factors in PLT Engineering which supported a conclusion that the OCSLA situs requirement was met in that case, and the district court placed excessive weight upon our observation that the "locations where the substantial work was done were covered situses."

It should be emphasized that PLT Engineering involved a contractual dispute, and our analysis in that context does not necessarily apply to a tort action arising on a vessel transporting workers on the high seas. Indeed, in PLT Engineering, we distinguished that case from Tallentire on the basis that the latter decision involved an "accident . . . on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity," namely "the ferrying of passengers from an 'island,' albeit an artificial one, to the shore." Id. at 1050 (quoting Tallentire, 477 U.S. at 218-19). The accident in this case involved a vessel transporting workers between two "islands" rather than between an "island" and the shore, but it is nevertheless clear that the vessel here was engaged in the "ferrying of passengers," which is "an activity bearing

9

a significant relationship to a traditional maritime activity." Id. This case thus falls squarely within the scope of Tallentire, as interpreted in PLT Engineering.[4]

We note that there are other bases upon which this case can be distinguished factually from Tallentire, but none of these bases dictates a different result here. It is true, for example, that the SEA HORSE IV was much closer to an offshore platform at the time of the accident than the helicopter in Tallentire, which crashed miles from the nearest platform. Appellant asserts in its brief, and appellees do not dispute, that:

> Although the district court stated in its Reasons and Order that the vessel was a "few yards" from the platform when the injury occurred, there is technically nothing in the record to support this. The only evidence in the record on this point is the declaration from the vessel's captain, Henry Cameron, who notes that the vessel was in the process of positioning "near" the platform when the accident happened. Appellant's Br. 7 n.2.

It is thus apparent that, unlike in Tallentire, the accident here occurred in close proximity to an offshore platform. However, there is no suggestion that Neil was in actual physical contact with the platform at the time of his accident. This is significant in light of our precedent indicating that an accident involving a plaintiff on a vessel who was nevertheless in physical contact with a platform

---

[4]It seems clear that Tallentire provides the appropriate analysis for this case, but we recognize that there may be other cases where the lines of demarcation between PLT Engineering and Tallentire are less clear. While we view the fact that PLT Engineering was a breach of contract case to be of some significance in distinguishing it from Tallentire, our opinion today should not be read as suggesting that a simple tort/contract dichotomy applies in this context. It is apparent that the issues in this context are complex, and we leave the establishment of boundaries between PLT Engineering and Tallentire to future decisions.

may be deemed to have occurred on an OCSLA situs. In Hollier v. Union Texas Petroleum Corp., 972 F.2d 662 (5th Cir. 1992), for example, a platform worker was killed while stepping from a stationary crew boat to an offshore platform. Hollier, 972 F.2d at 664-65. In concluding that the OCSLA situs requirement was met, we noted that, while a crew boat "is generally considered to be a vessel, not an artificial island" because "the [employee] was in physical contact with the platform at the time of his injury," the situs requirement was met in that case. Id.

We reached a similar result in Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1527 (5th Cir. 1996), which involved a plaintiff on a vessel who was, at the time of his accident, in physical contact with a rope connected to an offshore platform. In contrast to Hollier and Hodgen, the evidence in this case is clear that Neil was not in physical contact with an offshore platform at the time of his accident, and we therefore deem it irrelevant whether the vessel on which he was traveling was a few meters or a few miles from the platform. In neither case would the SEA HORSE IV qualify as "the subsoil and seabed of the [OCS]," an "artificial island" or an "installation . . . permanently or temporarily attached to the seabed" within the meaning of § 1333(a)(1).

The district court acknowledged Hodgen in its order, writing that:

Seacor argues that the dispositive issue is whether the vessel was in physical contact with the platform or seabed at the time of the accident. In making this argument, Seacor is asking the Court to apply a bright line rule that if there is no physical connection with an OCSLA situs, state law does not apply. However, the Fifth Circuit "does not apply any physical contact rule with the rigidity that [Defendant] would impose." Hodgen, 87 F.3d at 1527 (discussing Hollier v. Union Texas Petroleum Corp., 972 F.2d 662 (5th Cir. 1992)).

11

Grand Isle, 2007 WL 2874808 at *3. A closer review makes it clear that Hodgen does not support the result reached by the district court in this case. In making the aforementioned observation in Hodgen, we were responding to a rather hyper-technical argument that the offshore worker in that case had actually suffered his injuries after he had let go of the rope connecting him to the platform, thus negating any finding of physical contact. Hodgen, 87 F.3d at 1527. In responding to this argument, we wrote that:

> Even if the evidence were pellucid that Hodgen's injuries were caused by the spill onto all fours, and that Hodgen released the rope at this precise moment, we would still find OCSLA situs present. In Hollier, the injured worker "was crushed, then drowned." 972 F.2d at 664. Unless we are to believe that the Hollier plaintiff sank immediately to the seabed or drowned while at all times remaining in contact with the platform, we must presume that the drowning did not occur while the worker was in physical contact with an OCSLA situs. Thus, the Hollier court's holding would compel the conclusion that this circuit does not apply any physical contact rule with the rigidity that appellants would impose.

Id. It should be apparent from this quote that we were merely stressing in Hodgen that we would not carry any physical contact requirement to extreme or absurd lengths, noting that we had not done so in Hollier. However, the fact remains that, in this case, there is no argument whatsoever that Neil was in contact with the platform at the time of his injury, as there was in Hodgen and Hollier. This case is thus clearly distinguishable from those decisions, and the district court erred in interpreting them as supporting OCSLA's applicability in this case.

We note that the issue here was recently addressed by U.S. District Judge Jay C. Zainey in a September 2007 summary judgment ruling in Fuselier v. Sea

Boat Rentals, Inc., No. 06-4488, 2007 WL 2713278 (E.D. La. 2007). Fuselier involved a lawsuit filed by a platform worker who tripped over baggage on the M/V SEA BREEZE, a vessel which was transporting him to his work offshore. In rejecting an argument that the LOIA should apply as surrogate federal law under OCSLA, Judge Zainey interpreted Tallentire and Demette as supporting a conclusion that:

> the threshold determination that must be made when determining whether state law governs a controversy arising on the OCS is whether the OCSLA applies. And the OCSLA only applies if the controversy arises on an OCSLA situs. The "controversy" in this case is Fuselier's claim for injuries that he sustained aboard the SEA BREEZE. Fuselier was injured on the high seas while en route to an OCSLA situs. It is undisputed that Fuselier did not sustain his injuries on an OCSLA situs. . . . Although no decision, non-binding or otherwise, provides the Court an analytical roadmap for the appropriate analysis to be used in this case, the decisions that bind this Court unequivocally hold that the OCSLA does not reach controversies that do not arise on an OCSLA situs.

Fuselier, 2007 WL 2713278 at *4, citing Tallentire and Demette. Judge Zainey accordingly concluded that the OCSLA situs requirements was not met in that case and that it was therefore unnecessary to proceed past the first factor in the PLT Engineering test.

In this case, it is likewise apparent that the SEA HORSE IV does not qualify as an OCSLA situs under § 1333(a)(1), as interpreted in Demette. The first part of the PLT Engineering test is therefore not met, and the district court erred in concluding that OCSLA applied in this case. By extension, the district court likewise erred in concluding that the LOIA applied as surrogate federal law to bar Seacor's indemnity claims against Grand Isle. We therefore VACATE the district court's order invalidating the indemnity agreement in this case and

13

granting summary judgment in favor of Grand Isle and Gray.

The district court indicated in its summary judgment order that appellees had raised an additional argument before it, namely that "Section 905(b) of the LHWCA is applicable to the case and prohibits enforcement of the indemnity provision." Grand Isle, 2007 WL 2874808 at *1. The district court did not address this argument in its order, and counsel for appellees emphasized during oral argument that this argument would remain outstanding regardless of our resolution of the OCSLA issues on appeal. Without expressing any opinion regarding the merits of this argument, we conclude that this case should be REMANDED so that the district court may address it and any other outstanding issues in this declaratory judgment action.[5]

VACATED AND REMANDED.

---

[5]It appears that there are, at least potentially, other issues in this case which are not resolved by our opinion today. For example, appellees asserted in their declaratory judgment petition that "Gray's insurance policies issued to [Grand Isle] do not provide Seacor coverage for Denny Neil's claims," and nothing in our opinion today addresses the scope of insurance coverage provided by Gray.

14