W. EUGENE DAVIS, Circuit Judge:
I.
The question presented by this appeal is what law governs the resolution of a contractual dispute, here enforceability of an indemnity provision, when the act or omission that causes the underlying death, bodily injury, or property damage (hereafter, the “tort”) which triggered the contractual indemnity claim occurred on navigable water on the Outer Continental Shelf (“OCS”), but the contract that creates the indemnity obligation between the parties calls for a majority of the work to be performed on stationary platforms on the OCS. Central to this issue is the application of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. (“OCSLA”).
The law is clear that when a tort occurs on navigable water on the OCS, as opposed to, for example, a stationary platform, and a non-seaman is injured, maritime law applies to the ensuing tort action by that worker against third parties. Some of our cases have applied this same rule to a contractual indemnity dispute and looked to the site of the tort to determine the situs of the controversy, the first step in deciding what law applies. Instead of looking to the site of the tort, other cases have applied what amounts to a foeus-of-the-contract test which looks to where the contract contemplates that most of the work will be performed: if a majority of the performance called for by the contract is on stationary platforms on the OCS, that is the situs of the controversy for purposes of determining whether the law of the adjacent state applies as surrogate federal law. If a majority of the work called for by the contract is aboard vessels on navigable water on the OCS, this is the situs of the controversy.
We hold that the focus-of-the-contract test is the appropriate test to apply in determining the situs of the controversy in contract cases, and we adopt that rule for the circuit. We therefore agree with the trial judge that because the relevant contract contemplated that a majority of the contractor’s work would be performed on stationary platforms on the OCS, this should be deemed the relevant “situs” for the instant indemnity dispute and because none of the other factors lead us to apply any other law, we must apply Louisiana law. When we apply Louisiana law, the Louisiana Oilfield Indemnity Act, La.Rev. Stat. Ann. § 9:2780(A) (“LOLA”) renders the indemnity agreement at issue unenforceable, so we affirm the summary judgment in favor of Grand Isle.
II. FACTS
This declaratory judgment action involves an indemnity dispute between Grand Isle and Seacor, two contractors of BP American Production Company (“BP”). Grand Isle’s contracting duties involved the repair and maintenance of BP’s offshore platforms, while Seacor’s duties involved the transporting of workers for BP and its contractors. The indemnity dispute in this case arises from an April 2005 incident in which Denny Neil, a Grand Isle employee, was injured in a fall onboard the WV SEA HORSE IV, a vessel owned and operated by Seacor. At the time of the accident, the SEA HORSE IV was transporting Neil from his work platform to the residential platform which contained his living quarters. Deposition testimony indicated that the vessel was in close proximity to the residential platform at *782 the time of the accident, but it is undisputed that neither Neil nor the SEA HORSE IV were in physical contact with the platform when the accident occurred.
Neil filed suit against Seacor in the U.S. District Court for the Southern District of Texas, asserting a claim for vessel negligence under § 905(b) of the Long-shore and Harbor Worker’s Compensation Act (“LHWCA”). Seacor tendered its defense and indemnity to Grand Isle; Seacor also claimed the benefit of insurance provided by Grand Isle’s insurer Gray. On March 17, 2006, Grand Isle and Gray filed suit in the U.S. District Court for the Eastern District of Louisiana, seeking a declaratory judgment that: (1) Grand Isle is not contractually obligated to defend and indemnify Sea-cor; and (2) Seacor is not entitled to insurance coverage from Gray.
Grand Isle and Gray subsequently filed motions for summary judgment in which they argued that by virtue of OCSLA, the LOIA applies as surrogate federal law in this case, thus invalidating the contractual indemnity provision at issue here; and (2) that § 905(b) of the LHWCA is applicable to the case and prohibits enforcement of the indemnity provision. Seacor filed its own cross motion for summary judgment, maintaining that general maritime law governs the dispute and noting that nothing in that law prohibits the indemnity agreement at issue here.
Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 543 F.3d 256, 257-58 (5th Cir.2008) (hereinafter Grand Isle (Panel)), vacated, 569 F.3d 523 (5th Cir.2009) (en banc). Seacor seeks indemnity under the contract between Grand Isle and BP. Paragraph 14.07 of that contract[1] is virtually identical to the indemnity agreement in a contract between BP and Seacor, “and neither party disputes that BP sought thereby to impose reciprocal indemnity obligations among its contractors.” Id. at 258. The undisputed objective was for each contractor whose employee was injured to hold harmless and indemnify BP (and other contractors engaged by BP on the jobsite) for liability resulting from injuries to or death of that employee. The material facts are not in dispute.
The ultimate legal issue before the district court and the panel, and now before the full court, is whether the adjacent state law of Louisiana, including the LOIA, applies to the case. The parties agree that if the LOIA does apply, it invalidates Grand Isle’s indemnity obligation to Seacor, but if Louisiana law and the LOIA do not apply, the indemnity agreement is enforceable.
To determine whether OCSLA required application of state law to this dis *783 pute, the district court applied the three-part test that the Supreme Court formulated in Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). We have applied that test in a number of cases, including Union Texas Petroleum Corp. v. PLT Engineering, Inc., 895 F.2d 1043, 1047 (5th Cir.1990) (hereinafter PLT). As we articulated the Rodrigue test in PLT, for state law to apply as surrogate federal law, three conditions must be met: “(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.” Id.
Here, the district court first considered whether the indemnity controversy arose on an OCSLA situs, i.e., on a stationary platform or other location on the OCS as provided for in OCSLA. In considering this first PLT condition, the district court determined that the OCSLA situs requirement was met because (1) the situs of the contract containing the indemnity agreement at issue depends upon the location where performance of the work is called for by the contract, and (2) the contract between Grand Isle and BP contemplated that most of the work was to be performed on BP platforms, i.e., OCSLA covered si-tuses. Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 2007 WL 2874808, at *3 (E.D.La.2007) (hereinafter Grand Isle (District)).[2] The court also found that the second and third PLT conditions were met. Id. at *4-5. Accordingly, the district court granted Grand Isle’s and Gray’s motion for summary judgment and denied Seacor’s motion. Id. at *6.
Seacor timely appealed, and the panel reversed. The panel concluded that because Neil’s accident occurred on a vessel on navigable water above the OCS and not on a situs expressly covered under the OCSLA, this indemnity dispute did not arise on a covered situs; thus, it was unnecessary to address the second and third prongs of the PLT test. Grand Isle (Panel), 543 F.3d at 259-60. The panel therefore concluded that the LOIA could not apply as surrogate federal law to void the indemnity agreement, and it vacated and remanded on that basis. Id. at 263-64. We granted Grand Isle’s petition for rehearing en banc to address this important question of law.
III. JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction pursuant to 28 U.S.C. § 1291. “[W]e review de novo the district court’s order granting [Grand Isle’s and Gray’s] motion for summary judgment under Rule 56 and apply the same standard as did the district court.” Cornerstone Christian Schs. v. Univ. Interscholastic League, 563 F.3d 127, 133 (5th Cir.2009).
IV. ANALYSIS
As indicated above, the critical question we must answer is what law applies. The answer to this question depends on the applicability of the OCSLA to the uncon-tradicted facts. More particularly, in PLT *784 terms, we must identify the “situs” of the controversy.
In deciding this question we begin with the governing statute, OCSLA, which provides in pertinent part:
(2)(A) To the extent that they are applicable and not inconsistent with this sub-chapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws .of each adjacent State, now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be, within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf
43 U.S.C. § 1333(a)(1), (2)(A).
The Supreme Court in Rodrigue stated that “[t]he purpose of the [OCSLA] was to define a body of law applicable to the seabed, the subsoil, and the fixed structures ... on the outer [sic] Continental Shelf.” 395 U.S. at 355, 89 S.Ct. 1835. As we noted in PLT, “Rodrigue made clear that ‘for federal law to oust adopted state law, federal law must first apply.’ ” 895 F.2d at 1047 (quoting Rodrigue, 395 U.S. at 359, 89 S.Ct. 1835). To determine whether state law applies, the PLT court expressed the three-part test stated above.[3] In PLT, the court began its analysis by looking to Rodrigue, a seminal case interpreting OCSLA.
Rodrigue was a consolidated case involving two separate wrongful death actions. In one, a crane operator on a stationary platform was killed when the crane collapsed and toppled over. In the other, the decedent was killed when he fell from a derrick above a stationary platform to the floor of the platform. The defendants argued that the Death on the High Seas Act, 46 U.S.C. § 76, et seq. (“DOHSA”), applied; the survivors sought application of the Louisiana Wrongful Death Act. For both cases, the Supreme Court held that because the deaths occurred on stationary platforms on the Outer Continental Shelf — each a covered situs under OCS-LA — Louisiana law applied as surrogate federal law through OCSLA. Rodrigue, 395 U.S. at 355, 89 S.Ct. 1835. Thus, in a tort action, Rodrigue illustrates that the OCSLA situs requirement is met if the tort occurs on a platform or other OCSLA covered situs as provided in § 1333(a)(2)(A).
The converse is equally clear. In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met. For example, in Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), a helicopter ferrying platform workers home after they finished their shift on a stationary platform crashed and two offshore workers drowned. The Court was called upon to decide whether DOHSA applied or the Louisiana wrongful death statute applied as surrogate federal law under OCSLA. 477 U.S. at 209, 106 S.Ct. 2485. The Court concluded that because the incident occurred more than a marine league from shore, DOHSA applied, stating:
*785 Here, admiralty jurisdiction is expressly provided under DOHSA because the accidental deaths occurred beyond a marine league from shore. See 46 U.S.C. § 761. Even without this statutory provision, admiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity.
Id. at 218-19, 106 S.Ct. 2485.
In concluding that OCSLA did not call for application of state law when the incident did not occur on an OCSLA situs, the Tallentire Court stated:
The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and not as vessels, for purposes of defining the applicable law because maritime law was deemed inapposite to these fixed structures.
Id. at 217, 106 S.Ct. 2485 (citing Rodrigue, 395 U.S. at 361-66, 89 S.Ct. 1835).
Although it is clear that Rodrigue and Tallentire provide the situs rule for tort cases, it does not follow that contract cases triggered by an underlying tort depend on the situs of that tort, i.e., the location of that occurrence. Notably, PLT was a pure contract case to collect unpaid invoices for the installation of a subsea pipeline and to impose a statutory lien on the pipeline under Louisiana law. 895 F.2d at 1045-46. PLT and its subcontractors relied on Tallentire (and OCSLA itself) for the proposition that the controversy arose on an OCSLA situs and state lien law applied. Id. at 1049-50. Union Texas Petroleum Corp. argued that state law did not apply because
[A]ll of the subcontractors’ contracts for the building and completion of the pipeline called for services which were provided from vessels and by divers in the ocean, not on a platform, and therefore were not in areas covered by OCSLA.
Id. at 1047. Judge Brown, writing for the panel in PLT, held, however, that despite the fact that some of the work was performed from vessels, state law did apply.
In the first place, the gathering line exactly fits the statutory definition of an “other device[ ] permanently or temporarily attached to the seabed ... erected thereon for the purpose of ... developing, or producing resources therefrom.” 43 U.S.C. § 1333(a)(1). In addition, the gathering line was buried beneath the ocean floor. It was connected to a platform at one end. It was connected to a transmission line at the other. The locations where the substantial work was done were covered situses — the subsoil or seabed; an artificial island; and an installation for the production of resources. Thus the first condition [situs] is met.
Id. at 1047-48 (footnotes omitted) (emphasis added). To determine situs, the PLT panel did not focus on where the underlying incident that gave rise to the contract claim occurred (i.e., the nonpayment of the subcontractors) but looked instead to where the work under the contract was performed.[4]
Later cases ostensibly applying PLT to contractual indemnity claims have ignored the situs of the contract and looked instead to the situs of the underlying tort. Those cases essentially hold that the location of the underlying tort determines the “situs of the controversy” without regard to where the majority of the work under the *786 contract was to be performed. For example, in Hollier v. Union Texas Petroleum Corp., 972 F.2d 662, 663-64 (5th Cir.1992), a worker was crushed between a boat and a stationary platform and then drowned. His survivors filed a wrongful death action against the platform and vessel owners, and the platform owner in turn filed a third-party demand seeking contractual indemnity. Id. at 664. The underlying tort claim settled, leaving only the contractual indemnity claim to be decided on appeal. Id. In analyzing the situs element of the PLT test, the Hollier panel did not consider or discuss the contract’s situs — where the work was performed under the contract — but looked exclusively to the situs of the underlying incident. Id. at 664-65.
Likewise, in Smith v. Penrod Drilling Corp., 960 F.2d 456, 458 (5th Cir.1992), the underlying incident (an injury on a drilling platform) settled, leaving only a contractual indemnity claim on appeal. As in Hollier, the Smith panel did not discuss the situs of the contract under the first prong of the PLT test; it looked only to the situs of the underlying incident. Id. at 459.
Indeed, in neither Hollier nor Smith did we make an explicit choice between the situs of the contract and the situs of the underlying incident; we simply determined that the situs of the underlying incident controlled without discussion. The confusion is evident in Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1527 (5th Cir.1996), in which the panel stated: “Assuming without deciding that Hollier and Smith state a rule in this circuit providing that the situs of the controversy in an OCSLA indemnity clause case is the location of the accident, we agree with the district court and find that the situs requirement is met in this case” because the underlying incident occurred on an OCS-LA situs. See also Demette v. Falcon Drilling Co., Inc., 280 F.3d 492, 498 (5th Cir.2002) (finding that OCSLA situs existed for both a tort claim and the related indemnity claim — without distinguishing between the two — because the accident took place on an OCSLA situs); Adams & Milhollin, supra note 4, at 54 (noting Hollier and Hodgen’s failure to look to the contract for situs). Instead of following PLT in these contract cases and applying general contract principles, we applied tort principles and looked to the location of the underlying incident for OCSLA situs.
Our case law, however, requires us to distinguish between a contractual indemnity claim and the underlying incident. For instance, in Sumrall v. Ensco Offshore Co., 291 F.3d 316 (5th Cir.2002), we explained that in an earlier case, “although the underlying claim creating the obligation for which Shell Oil sought indemnification from Sladco sounded in tort, the obligation for which Shell sought indemnification itself was contractual in nature, as it arose from the agreement between Shell and Diamond M.” Id. at 319 (citing Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5th Cir.1981)) (emphasis in original).
Here, the district court followed PLT, which analyzed the indemnity action as a contract claim rather than as a tort claim. On appeal, however, the panel followed those of our cases that had determined OCSLA situs using tort principles. The opposed positions of the district court and the panel both find support in our case law, which all can agree is conflicting and confusing.[5] We granted en banc consider *787 ation of this case to clarify this area and to resolve at least some of the conflict among our cases.
Once we recognize that the claim for indemnity is a claim based in contract rather than in tort, we see no reason to apply tort analysis to determine where the contractual controversy arose. It makes more sense to apply a focus-of-the-contract test and say that a contractual dispute— the “controversy” under the first condition of the PLT test — arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses.[6]
This approach is sounder because it applies contract principles rather than tort principles to a contract case. Applying tort rules would allow the fortuitous location of an accident to determine the si-tus — and the applicable law — of a contractual controversy. The tort-situs approach prevents commercial parties from reliably allocating risk in their contractual arrangements because they have no way of predicting where “controversies” might arise and thus no way of knowing which law will govern.
Using contract principles to establish the situs of a contractual dispute both maintains the longstanding rule treating contractual indemnity claims as separate from underlying tort claims and grants contracting parties a far greater measure of predictability and stability in allocating risk.
For the reasons set forth above, we hold that, in determining the first condition of the PLT test, a contractual indemnity claim (or any other contractual dispute) arises on an OSCLA situs if a majority of the performance called for under the contract' is to be performed on stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A). It is immaterial whether the underlying incident that triggers the indemnity obligation occurs on navigable waters or on a platform or other OSCLA situs. A number of our cases have determined situs in a contractual indemnity case not by looking at the focus of *788 the contract, but rather looking at where the underlying accident occurred which gave rise to the indemnity claim.[7] Many of those cases, we believe, ultimately reach the correct result for other reasons, and with respect to the extent (and only to that extent) the “tort” analysis was used in those cases to determine situs, we disagree and overrule that portion of those opinions.[8]
*789 We therefore agree with the district court that the indemnity dispute in this case arose on an OCSLA situs because it is uncontested that a majority, if not all, of the work called for under the contract was to be performed on stationary platforms on the OCS.
The appellant does not challenge the district court’s conclusion that the second and third PLT conditions are met and we agree with the district court’s conclusion in this respect. As to the second condition, the district court determined that this contract, which called for maintenance work on a stationary platform located on the OCS, was not a maritime contract and therefore maritime law did not apply of its own force. Grand Isle (District), at *4. As to the third condition, as the district court noted, “[t]he Fifth Circuit has specifically held that ‘nothing in the LOIA is inconsistent with federal law.’ ” Id. at *5 (quoting Hodgen, 87 F.3d at 1529). We agree with these conclusions.[9]
Having determined that all three conditions of the PLT test are met, it follows that the adjacent state law of Louisiana[10] will apply as surrogate federal law and that the LOIA renders the indemnity agreement unenforceable. The district court correctly granted summary judgment to Grand Isle and Gray.
AFFIRMED.

. Paragraph 14.07 reads:
Contractor [Grand Isle] agrees to defend, indemnify, release and hold company's other contractors harmless in accordance with the provisions of this Article 14 (to the extent such other Contractors execute cross indemnification provisions substantially similar to those contained in this section 14.07) from and against all claims, liabilities, damages, and expenses (including without limitation attorney's fees and other costs of defense), irrespective of insurance coverages for the following: 14.07.01(1) all injuries to, deaths, or illnesses of persons in Contractor Group: ... whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of company's other contractors or any other entity or person or the unseaworthiness of any vessel.
"Contractor Group" is defined in Paragraph 14.01.03 as "the following entities and persons individually and collectively: Contractor [Grand Isle Shipyard, Inc., per the preamble to the contract] and its Affiliates, its subcontractors and their Affiliates, and the officers, directors, employees, agents, and representatives of all of those entities .... ”

. The district court also relied on a well-reasoned district court opinion, Wagner v. McDermott, Inc., 899 F.Supp. 1551 (W.D.La.1994), aff'd. 79 F.3d 20 (5th Cir.), cert. denied, 519 U.S. 945, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996). The district court in Wagner stated: "Thus, under Union Texas, the OCSLA situs factor is met in the instant case, as the work required by the contract was performed on an offshore platform.” Id. at 1556. The court of appeals affirmed on an alternate ground.

. “(1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil seabed, or artificial structure permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with federal law.” 895 F.2d at 1047.

. See Julia M. Adams & Karen K. Mihollin, Indemnity on the Outer Continental Shelf—A Practical Primer, 27 Tul. Mar. L.J. 43, 53 (2002).

. See, e.g., David W. Robertson, The Outer Continental Shelf Lands Act’s Provisions on Imisdiction, Remedies, and Choice of Law: Correcting the Fifth Circuit's Mistakes, 38 J. Mar. L. & Com. 487 (2007); E. Stewart Spielman, Drilling Through the Muddied Waters on the Outer Continental Shelf: An Examination of the Fifth Circuit’s Recent Decision in Dem- *787 ette v. Falcon Drilling Co., 26 Tul. Mar. L.J. 683, 694 (2002) (" 'In each new case, a panel of this court must comb through a bewildering array of cases that rely upon inconsistent reasoning in the hope of finding an identical fact situation.’ ” (quoting Smith, 960 F.2d at 461)); Adams & Milhollin, supra note 4, at 100-01 ("Presumably, the lawyer now knows whether the indemnity at issue is enforceable, having completed the various analyses and determinations required under the OCSLA. It is highly likely, however, that the office aspirin bottle is now empty .... We can only hope that maritime lawyers everywhere take comfort in the fact that no matter how well they adhere to the tests and guidelines, one out of every two at the end of the exercise will have a different answer as to what law applies, and whether the indemnity is enforceable.”); Kenneth G. Engerrand, Primer of Remedies on the Outer Continental Shelf, 4 Loy. Mar. L.J. 19, 20 (2005).

. As we discussed in Davis & Sons v. Gulf Oil Corp., 919 F.2d 313, 315-17 (5th Cir.1990), reh’g denied, 924 F.2d 1054 (5th Cir.1991), it is a common practice for companies contracting for work in the oilfield to enter into contracts in two stages. Typically, they first sign a “blanket contract” that may remain in place for an extended period of time. Later, they issue work orders for the performance of specific work, which usually incorporates the terms of the blanket contract. As we said in Davis & Sons, where the contract consists of two parts, a blanket "contract followed by later work order, the two must be interpreted together.”
Generally, each work order is for a discrete, relatively short-term job. Unless a contrary intent is reflected by the master contract and the work order, in determining situs in a contract case such as this, courts should ordinarily look to the location where the work is to be performed pursuant to the specific work order rather than the long term blanket contract.

. Judge Garza's straightforward dissent agrees with Seacor's position and relies on this line of cases. We have explained above why we decline to follow these cases.
Judge Owen's dissent adopts a position that neither of the parties nor their experienced admiralty attorneys argued to the district court, the panel, or the en banc court. She concedes that in tort cases, § 1333(a)(2)(A) of OCSLA directly adopts the law of the adjacent state as the law of the United States on artificial islands and fixed structures on the OCS. A contrary position is obviously foreclosed by the Supreme Court's decisions in Rodrigue and Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In those cases the Court directly applied the law of the adjacent state without regard to the state’s conflict rules. Judge Owen contends, however, that in contract cases, § 1333(a)(2)(A) should be interpreted differently. In contract cases, she argues that when this section of OCSLA adopts the "civil and criminal laws of each adjacent state,” this language should be interpreted as adopting the adjacent state's conflict of law rules. We see no basis to read this section of OCSLA to directly apply the state's law in a tort case while adopting the state's conflict of law rules in a contract case. The section unambiguously adopts the "civil and [criminal] laws of the adjacent state” without distinguishing between the types of civil cases. We see no reason to treat contract cases and tort cases differently for choice of state law purposes since they are both "civil” cases.
In tort cases, the Supreme Court has given us clear directions to directly adopt the adjacent state’s law rather than to adopt that state’s conflict rules. In Huson, the Court considered whether Louisiana’s one year statute of limitations would bar a tort action which occurred on a platform on the OCS. Id. at 98-99, 92 S.Ct. 349. The court considered plaintiff's argument that the Louisiana one year statute should not apply because under Louisiana’s conflict rules, "prescriptive” (as opposed to peremptive) rules are not binding outside the forum. Id. at 99-103, 92 S.Ct. 349. The Court rejected that argument and immediately following that discussion stated that ”[s]ince the federal court is not, then, applying the law of another forum in the usual sense, ordinary conflict of law principles have no relevance.” Id. at 102-03, 92 S.Ct. 349 (emphasis in original).
In Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) the Court dealt primarily with whether state courts had concurrent jurisdiction over suits arising under OCSLA. The Court concluded that nothing within the Act prevented state jurisdiction but it reiterated the rule announced in Huson that "OCSLA does su-percede the normal choice of law rules that the forum would apply.” Id. at 482 n. 8, 101 S.Ct. 2870. The Court in Rodrigue directly applied Louisiana’s wrongful death act to a wrongful death that occurred on a platform on the OCS without any discussion of conflict of law principles.
Judge Owen seems primarily concerned with the potential problem that the rule we adopt in this case does not cover the situation where the contract calls for work on platforms off the coast of both Louisiana and Texas under circumstances where the contract would be enforceable in one state but not in the other. That set of facts is not before us in this case and the legal issues such a case presents have not been briefed or argued. In this case, the parties agree that if the adjacent state law applies, Louisiana law, including the Louisiana Oilfield Indemnity Act, is the applicable law. And there is no evidence in the record that the contract called for work anywhere other than off the coast of Louisiana.
In sum, we believe Judge Owen’s position is inconsistent with a plain reading of § 1333(a)(2)(A) of OCSLA, cannot be reconciled with the interpretation of that statute by the Supreme Court, and has no relevance to the issues in this case.

. The opinions we refer to include the following: Diamond Offshore Co. v. A & B Builders, 302 F.3d 531, 546 (5th Cir.2002) (remanding for the district court to determine OSCLA situs based on the location of the injury); Demette, 280 F.3d at 500 (defining OSCLA *789 situs in a contractual indemnity case by the location of the underlying tort); Hodgen, 87 F.3d at 1527 (stating that "the situs of a controversy in an OSCLA indemnity clause case is the location of the accident”); Smith, 960 F.2d at 459 (stating that the controversy occurred on an OCSLA situs because the injury occurred on a platform); Hollier, 972 F.2d at 664 (defining OSCLA situs in a contractual indemnity dispute by the location of the underlying tort).

. Our analysis adopts the PLT test in the order set forth by the PLT court. However, in determining whether state law applies in an OCSLA action, predicated on a contract, it is permissible to consider whether the contract at issue is a maritime contract before considering whether OSCLA situs has been established. Thus, if the contract sued upon is a maritime contact, maritime law applies and state law has no application so that the situs question need not be answered. However, if the contract sued upon is a non-maritime contract, then the situs question must be answered.

. Seacor also argues in passing that the provision in the Grand Isle contract that chooses maritime law as the applicable law should govern this contractual claim. We disagree. As we said in PLT: "We find it beyond any doubt that OCSLA is itself a Congressionally mandated choice of law provision requiring that the substantive law of the adjacent state is to apply even in the presence of a choice of law provision in the contract to the contrary.” 895 F.2d at 1050 (citations omitted). See also Gulf Offshore Co., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784; Texaco Exploration & Production, Inc. v. AmClyde Engineered Products Co., 448 F.3d 760 (5th Cir.2006).