ROSEMARY LEDET, Judge.
LThis is a homeowners’ suit for defective installation and maintenance of a residential heating, ventilation, and air conditioning (“HVAC”) system. The home owners, James Wadick, III, and his wife, Susan Wadick, filed this suit against the company that performed the allegedly defective work, General Heating and Air Conditioning, LLC (“General”), and its insurers. The Wadicks alleged that General breached its contract to properly install components of the HVAC system in their home and to maintain the system. As a result of those breaches, they alleged that mold and mildew developed in their house. Seeking to enforce an exculpatory clause for mold damages contained in the installation contract, General filed a motion for partial summary judgment. From the trial court’s judgment granting General’s motion, the Wadicks’ appeal. The Wadicks *589 additionally appeal from the trial court’s interrelated judgment denying their motion to file a third amended and supplemental petition, asserting, among other things, a gross negligence claim. For the reasons that follow, we convert the Wad-icks’ appeal from the denial of their motion for leave to amend to an application for supervisory writ, grant their writ, ]2and deny their requested relief. As to General’s motion for partial summary judgment, we affirm in part, reverse in part, and remand for further proceedings.
As noted, the Wadicks’ motion for leave to amend is interrelated with General’s motion for partial summary judgment seeking to enforce the exculpatory clause. Before addressing the jurisdictional issue raised by the motion for leave to amend, it is thus necessary to summarize the factual and procedural background of this case. FACTUAL AND PROCEDURAL BACKGROUND
The relevant facts in this case are virtually undisputed. Since 1989, the Wadicks have jointly owned and resided in a house located at 1663 Soniat Street in New Orleans, Louisiana. Beginning in 2003, the Wadicks entered into annual maintenance contracts with General for the regular maintenance of their residential HVAC system. In December 2006, General recommended that the Wadicks replace three components of their HVAC system — the older, existing five-ton furnace; the existing evaporator coil; and the return air transition duct work connected to those components. General generated, and provided the Wadicks with, a written proposal dated December 29, 2006. On January 5, 2007, Mr. Wadick signed the proposal (also referred to as the installation contract); Mrs. Wadick never signed it.[1] In March 2007, General completed all of the installation work as set forth in the proposal. After the work was completed, the Wad-icks continued to enter into annual maintenance contracts with General. Thereafter, the | -Wadicks began noticing mold and mildew in their house. Ultimately, they discovered that their HVAC system was the source of the mold and mildew.
On March 2, 2011, the Wadicks commenced this suit against General alleging, among other things, that it breached its contractual obligations under the installation and maintenance contracts. In their first and second supplemental and amending petitions, the Wadicks added General’s liability insurers, Lafayette Insurance Company and Republic Fire and Casualty Insurance Company, as defendants.[2]
After answering the petition, General filed a motion for partial summary judgment seeking to enforce the exculpatory provision for mold damages printed on the reverse side of the proposal. The provision read as follows:
Seller makes no guarantees, warranties or representations concerning, and shall not be responsible for or liable for mold, fungi, rot, bacteria, humidity, spores, mildew, and/or any damage, illness or injury related to these, howsoever caused, whether arising directly or indirectly out of, or as a result of, or as a consequent [sic] of, the workmanship, *590 equipment, materials or design incorporated in the work provided by seller.
Immediately above Mr. Wadick’s signature on the front side of the proposal was the following language:
The undersigned accepts this proposal and all its terms and conditions as a binding contract subject to the approval of the Buyer/Customer by General Heating & Air Conditioning Co., LLC. This agreement incorporates the terms on the reverse side, whether or not you have received or read those terms.
|4Based on the above provisions, General contended that the trial court should dismiss any and all mold claims asserted by the Wadieks against it that rely upon the proposal (the installation contract) as the source of an obligation owed by it. General’s motion for summary judgment rested upon the contractual provision and its lack of knowledge that the Wadieks had any complaints regarding the installation of the HVAC components, which was completed in 2007.
Opposing the motion, the Wadieks contended that summary judgment was inappropriate for the following four reasons:
1.General is separately liable under its annual maintenance contracts, which, contrary to the implication made in General’s Motion for Partial Summary Judgment, do not have language on the reverse side that excludes liability for mold damages.[3]
2. By failing to call attention to and explain the terms on the reverse side of the installation contract, there was no valid waiver of the Wadieks’ right to warranty and recovery of damages;
3. The language on the reverse side of the installation contract fails to expressly and unequivocally release General from liability for its own negligence; and
4. Pursuant to La. C.C. art.2004, General cannot contract away liability for the personal injuries suffered by [the] Wadieks and the property damage they sustained as a result of General’s gross negligence.[4]
| ^Although the trial court denied General’s motion for partial summary judgment, it granted General leave to re-file its motion after additional discovery was conducted.
Following additional discovery, General re-filed its motion for partial summary judgment. In its second motion, General alleged that “[b]ecause the contracts (and numerous other written documents memorializing this understanding between the parties) are plain and unambiguous, and because plaintiff James Wadick has an extensive background in the HVAC business, it is apparent that General is entitled to such a partial summary judgment.” The trial court granted General’s motion.[5] In *591 its judgment dated June 17, 2013, the trial court tracked the language of the installation contract, holding that “any contract claim on behalf of James K. Wadick, III arising out of the January 5, 2007 installation contract with General Heating & Air Conditioning, LLC seeking alleged damages for mold, fungi, rot, bacteria, humidity, spores, mildew and/or ant [sic] damage, illness or injury related to those, however caused, whether arising directly or indirectly out of, or as a result of, or as a consequent of, the workmanship, equipment, materials or design incorporated in the work provided is hereby DISMISSED WITH PREJUDICE.”
Seeking reconsideration of the trial court’s ruling, the Wadicks filed a “Motion for New Trial and/or Reconsideration,” which the trial court denied. In so doing, the trial court, in its October 15, 2013 judgment, stated that its ruling was based on its finding that “Plaintiff, James Wad-ick’s claim regarding allegedly | (¡defective installation work sounds only in contract not tort law and is thus subject to the exclusionary language on the reverse side of the installation contract.” In the same judgment, the trial court denied the Wad-icks’ “Motion for Leave to File Third Amended Petition,” based on its finding that “the claims of Plaintiff, James Wad-ick, sound strictly in contract and that Plaintiff, Susan Wadick, has not pled a cause of action in tort against General.”[6] This appeal followed.
As stated in their notice of appeal, the Wadicks’ appeal is from the following two judgments:
Judgment signed on June 17, 2013 and designated as final on October 8, 2013, which granted partial summary judgment in favor of defendant, General Heating & Air Conditioning, LLC, and against plaintiff, James Wadick.
Judgment signed on October 14, 2013, which: (a) denied the Wadicks’ Motion for New Trial or Reconsideration of the June 17, 2013 partial summary judgment; and (b) denied the Wadicks’ Motion for Leave to File Third Amended Petition, the latter of which was also designated as a final judgment by the trial court.
Before addressing the merits, we first address a preliminary issue regarding this court’s appellate jurisdiction.
APPELLATE JURISDICTION
At the parties’ request, the trial court certified the rulings from which the Wadicks appeal as final appealable judgments under La. C.C.P. art. 1915. A trial court’s certification, however, is not determinative of this court’s appellate jurisdiction. Mandina, Inc. v. O’Brien, 13-0085, p. 4 (La.App. 4 Cir. 7/31/13), — So.3d —, —, 2013 WL 3945030 (citing Roundtree v. New Orleans Aviation Bd., 04-0702, p. 6 (La.App. 4 Cir. 2/4/05), 896 So.2d 1078, 1083). Insofar as the trial court’s certification of its ruling granting General’s motion for partial summary judgment and denying the Wadicks’ motion to reconsider that ruling, we find no error in the certification. See La. C.C.P. art. 1915 B(l). In contrast, we find the trial court’s certification of its judgment denying the Wadicks’ motion for leave to amend is legally erroneous.
In their notice of appeal, the Wadicks cite the principle that an interlocutory rul *592 ing is subject to review on appeal of a final judgment. In support, the Wadicks cite Favrot v. Favrot, 10-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102, n. 1. In Favrot, we summarized this principle as follows:
It is well-settled that although an interlocutory judgment may not itself be immediately appealable, it is nevertheless subject to review by an appellate court when a judgment is rendered in the ease which is appealable. People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752 (1968); La. C.C.P. ART. 1915 B(2); see also, e.g., Phillips v. Gibbs, 10-0175, p. 4 (La.App. 4 Cir. 5/21/10), 39 So.3d 795, 798. “When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment.” Roger A. Stetter, Louisiana Civil Appellate Procedure, § 3:32 (2010-11 ed.).

Id.

In this case, however, there is no “unrestricted appeal from a final judgment.” To the contrary, the other judgment from which the Wadicks appeal is an interlocutory ruling, granting a motion for partial summary judgment on one issue, that the trial court properly certified as final for purposes of appeal. La. C.C.P. art. 1915 B(l). The trial court’s certification of the judgment granting the motion for partial summary judgment did not encompass its other interlocutory ruling denying the motion for leave to amend. The Wadicks’ reliance on the |sprinciple that an interlocutory judgment is reviewable on appeal from a final judgment is thus misplaced.
Nonetheless, the trial court, at the parties’ request, separately certified, on two occasions, its ruling denying the Wadicks’ motion for leave to amend as a final ap-pealable judgment. First, in its October 15, 2013 judgment, the trial court ordered as follows: “the Court finds no just reason for delay and this Court’s Judgment denying plaintiffs’ Motion for Leave to File Third Amended Petition is hereby designated as a final, appealable judgment pursuant to La. C.C.P. art. 1915 B”. Second, in its November 6, 2013 order, the trial court certified that ruling as final. As noted at the outset, a trial court’s certification of a judgment as final is not disposi-tive of the question of this court’s appellate jurisdiction. Mandina, supra.
The denial of a motion for leave to file an amended petition is an interlocutory judgment that it not subject to being designated as final pursuant to La. C.C.P. art. 1915.[7] “The proper procedural device to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ.” Mandina, supra (citing Delahoussaye v. Tulane University Hosp. and Clinic, 12-0906, 12-0907, p. 4 (La.App. 4 Cir. 2/20/13), — So.3d —, —, 2013 WL 633121 (citing La. C.C.P. art. 2201)). In certain circumstances, this court has exercised its discretion to convert an appeal of an interlocutory judgment that is not immediately appealable into a supervisory writ application. Id. | flThis court has exercised its discretion to do so when the following two circumstances both are present:
1. The motion for appeal has been filed within the thirty-day time period allowed for the filing of an application *593 for supervisory writs under Rule 4-3 of the Uniform Rules, Courts of Appeal.
2. When the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court’s decision would terminate the litigation.
Delahoussaye, 12-0906 at pp. 4-5, — So.3d at—.
Both circumstances are present here. The Wadicks’ motion for appeal was filed within the thirty-day period applicable to supervisory writs contained in Rule 4-3 of the Uniform Rules, Courts of Appeal; thus, an application for supervisory writs would have been timely. Second, given the interrelated nature of the two rulings at issue — the motion for partial summary judgment and the motion for leave to amend — an immediate decision of the issue sought to be appealed is necessary to avoid re-litigation. Converting the appeal to a writ will therefore promote fundamental fairness and judicial efficiency. We thus exercise our discretion and convert the instant appeal of the judgment denying the motion for leave to amend to an application for supervisory writ.
DISCUSSION
On appeal, the Wadicks assert the following two assignments of error:
1. The Trial Court committed legal error in not applying the clear unambiguous language of La. C.C. art. 2004, which bars all exclusionary provisions that prospectively limit a party’s liability in advance for personal injury or gross negligence or intentional wrongdoing.
1102. The Trial Court committed legal error by denying a Motion for Leave to Amend that simply sought to include additional theories of recovery based on facts previous [ly] alleged in which said denial was based on the Court’s improper application of the long abolished “theory of the case” doctrine.
For ease of discussion, we separately address each of the two assignments of error before us in reverse order.

Denial of the Wadicks’ Motion for Leave to Amend

The governing statutory provision is La. C.C.P. art. 1151, which allows the amendment of a pleading at any time before the answer is served. After the answer is served, the petition “may be amended only by leave of court or by written consent of the adverse party.” La. C.C.P. art. 1151.[8] “[W]hen there is no written consent by the adverse party, it is within the sound discretion of the trial court to permit or refuse to permit an amendment to the petition.” Vidrine v. Carmouche, 422 So.2d 1327, 1331 (La.App. 3rd Cir.1982). The decision to permit or to refuse to permit leave to amend under La. C.C.P. art. 1151 should not be disturbed on appeal unless there has been an abuse of the trial court’s broad discretion. Salt Domes, Inc. v. Villere Food Group, Inc., 03-0185, pp. 5-6 (La.App. 4 Cir. 9/24/03), 857 So.2d 1110, 1114 (citing Glo *594 ver v. Shiflett Transport Services, Inc., 97-2787, p. 4 (La.App. 4 Cir. 5/6/98), 718 So.2d 436, 438).
In this case, the trial court denied the Wadicks’ motion for leave to amend to allege four additional theories of liability against General — negligence, gross | t negligence, redhibition, and products liability. In support of their motion for leave to amend, the Wadicks alleged that in their lengthy original petition, which included fifty-three paragraphs of factual allegations, they pled not only breach of contract claims, but also tort claims. On appeal, the Wadicks contend that the trial court erred in denying their motion for leave to amend their petition based on a finding that the facts alleged in their original petition did not sound in tort, but only in contract. They further contend that their amended petition added neither any new parties nor new facts to this litigation.
The Wadicks emphasize that pleading specific theories of liability, such as gross negligence, is unnecessary given the elimination of the “theory of the case” doctrine. See First South Production Credit Ass’n v. Georgiar-Pacific, 585 So.2d 545 (La.1991) (holding that “[a]s long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the ‘theory of the case’ doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, has been abolished.”); see also La. C.C.P. art. 862 (providing that a party may be granted any relief to which they are entitled “even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief’)
The Wadicks further contend that their amended petition, filed on July 1, 2013, was filed well in advance of the scheduled December 2, 2013 trial date. They submit that allowing them leave to amend would neither have caused any delay in the proceedings nor otherwise disturbed the scheduled trial date.[9]
| ^General counters that because the facts of this case and the jurisprudence reveal this is a breach of contract suit and because the Wadicks’ original pleadings echo these facts, the trial court correctly denied the Wadicks’ motion for leave to amend to assert any tort claims. In support of its position, General cites the following factors: discovery had closed; trial was imminent; and the Wadicks were seeking to add brand new, previously un-pled claims.
Although the Wadicks alleged in their motion that “[t]he theories sought to be inserted in the amended and supplemental Petition are based on and arise out of facts that have already been pled,” the trial court disagreed. Agreeing with General’s contention, the trial court found that the theories sought to be added had never been plead before July 2013. Contrary to the Wadicks’ contention, the trial court neither ruled on an exception of no cause of action, nor invoked the theory of the case doctrine. Rather, the trial court, noting that Louisiana is a fact pleading state, reasoned that the factual allegations in the original petition did not include any of the claims the Wadicks were seeking to add. The trial court also reasoned that “this case has been going on since 2011. It’s arising out of an installation contract that began in 2006, 2007, and all of a sudden I’ve got a negligence claim in a case that was for actions that took place in 2005 and 2007, and where a lawsuit was filed in *595 2011.” The trial court thus denied the Wadicks’ motion for leave to amend for the following three reasons: (i) the motion for leave to amend was filed over two years after the suit was commenced; (ii) the Wadicks were seeking to add previously un-pled claims; and (iii) this was their third amended petition.
The jurisprudence has identified the following relevant factors that trial courts consider in determining whether to permit or to refuse to permit leave to amend: the length of time since the original petition was filed; if either a discovery | ^cutoff date or trial date or both have been set; the length of time before the scheduled trial date; the number of prior amendments; if the amended pleading is factually connected to the original petition; if the amended petition asserts new factual allegations; and if the opposing party has relied to its detriment on the original pleadings. 2 Judge Steven R. Plotkin and Mary Beth Akin, Louisiana Civil Procedure, Article 1151 (2013) (collecting cases).
Applying the factors set forth above, we find no abuse of discretion in the trial court’s denial of the Wadicks’ motion for leave to amend. The motion was filed over two years after the original petition was filed. Two prior amendments to the petition were allowed, which added General’s insurers. The motion was filed after the completion of key discovery and only four months before the scheduled trial date. The third amended petition included four new causes of action that, as General alleged and the trial court found, were not based on the allegations of the original pleadings. Taken together, these factors establish that the trial court did not abuse its discretion in denying the motion for leave to amend.

Grant of General’s Motion to Enforce Exculpatory Clause

The narrow issue presented on appeal is the enforceability of the exclusionary provision in the installment contract to bar Mr. Wadick’s claims for mold damages. “[W]hen a contract can be construed from the four corners of the instrument -without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.” Iteld v. Four Corners Const., L.P., 12-1504, p. 16 (La.App. 4 Cir. 6/5/13), — So.3d —, —, 2013 WL 2443261 (citing Sims v. Mulhearn Funeral Home, Inc., 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590). The trial court found that to be the case here. Based on its construction of the language on the |14reverse side of the proposal, the trial court granted General’s motion for partial summary judgment, enforced the exclusionary provision, and dismissed Mr. Wadick’s claims for mold damages arising out of that installment contract.
This court recently summarized the general standard of review of a trial court’s ruling granting a motion for summary judgment, pursuant to La. C.C.P. arts. 966 and 967 and the jurisprudence, in Mandina, Inc. v. O’Brien, 13-0085, p. 5 (La.App. 4 Cir. 7/31/13), — So.3d—,—2013 WL 3945030 (collecting cases). Simply stated, the standard of review of a trial court’s grant of a motion for summary judgment is de novo using the same criteria applied by the trial court to determine whether summary judgment is appropriate. Id.
In its judgment, the trial court cited as its reason for finding the exculpatory clause valid — and La. C.C. art. 2004 inapplicable — its finding that Mr. Wadick’s claims under the installment contract sounded only in contract. On appeal, the Wadicks contend that regardless of whether Mr. Wadick’s claims sound in contract, negligence, gross negligence, or intentional tort, the exclusionary provision is absolute *596 ly null because it violates both parts of La. C.C. art. 2004.[10] In |15support of their contention, the Wadicks cite Ostrowiecki v. Aggressor Fleet, Ltd., 2008 WL 3874609 (E.D.La.2008) (unpub.).
In Ostrowiecki, the federal court addressed the following two issues regarding the effect of La. C.C. art.2004 on the waiver provision: “1) whether the waiver provision offends article 2004; [and] 2) whether the existence of offending language nullifies the entire provision, or merely the offending language.” Id. at p. II.[11] As to the first issue, the court in Ostrowiecki stated:
First, the plain text of the waiver provision of the Release Agreement indicates that it contains a clause that limits defendants’ liability “for causing physical injury to the other party.” La. Civ. Code, art 2004. It purports to release defendants from liability “for personal injury ... and any and all other damages ... that [Lilith] may sustain in connection of (sic) or arising out of [her] participation in the trip.” Physical injury would fall within the category of either “personal injury” or “any and all other damages” for which the waiver seeks to limit liability. Further, the waiver provision contains a clause which attempts to “exclude[ ] or limit [ ] the liability of one party for intentional or gross fault.” Id. The final sentence of the provision seeks to indemnify defendants “from any claim or lawsuit,” without regard to the predicate conduct underlying such claim. This sentence of the waiver provision purports to exclude liability, by way of Lilith’s indemnification, for all of her claims, including those based on intentional or gross fault. The Court concludes that the waiver provision offends both prongs of article 2004.
Id. As to the second issue, the court in Ostrowiecki reasoned that “[t]he waiver provision of the Release Agreement cannot retain its meaning once those aspects which offend article 2004 are nullified.” Id. at p. 14. The federal court thus nullified the entire waiver provision.
By analogy, the Wadicks point out that the same two issues are presented in this case. First, they contend that the exclusionary provision in the installment 11ficontract violates both parts of La. C.C. *597 art. 2004. It violates the first part because it is so broadly written that it relieves General from liability “however caused,” which would encompass intentional or gross fault arising out of the installment work. It violates the second part because it prospectively absolves General from liability for any physical injury arising out of its work, including “illness,” from mold exposure. As to the second issue, the Wadicks contend that the exclusionary provision cannot be reformed and that the entire exclusionary provision on the reverse side of the proposal is invalid and unenforceable.
General counters that the trial court correctly enforced the contractual provision excluding mold damage, which was signed by Mr. Wadick. General acknowledges that it is contrary to public policy and in contravention of Louisiana law, La. C.C. art.2004, for a contracting party to prospectively absolve itself from liability for injuries through its intentional or grossly negligent acts. See Broom v. Leebron & Robinson Rent A Car, Inc., 626 So.2d 1212,1216 (La.App. 2d Cir.1993). General, however, construes La. C.C. art.2004 to mean only that “a party may not contract away his right to pursue damages for physical injuries resulting from intentional or gross fault.” General thus contends that La. C.C. art.2004 only “protects tort victims who have entered into a contract which purports to limit anothér’s liability for intentionally causing the tort victim some physical injury.”
According to General, the Wadicks are not tort victims; rather, they are contractual claimants. General emphasizes the Wadicks’ failure to plead a tort claim arising out of the installment contract, and the trial court’s decision, addressed above, denying their motion for leave to amend to assert such torts claims. In support of its contention that the Wadicks’ claims sound solely in contract, General cites jurisprudence for the proposition that there are no tort duties h7owed by a contractor in this context; there are only contractual duties. See Everett v. Philibert, 08-2270, p. 6 (La.App. 1 Cir. 5/8/09), 13 So.3d 616, 620; Mentz Const. Services, Inc. v. Poche, 11-1474, p. 8 (La.App. 4 Cir. 3/14/12), 87 So.3d 273, 278. Moreover, General points out that the Wadicks failed to prove any intentional acts on its part or that it caused physical harm to the Wadicks. General thus contends that the trial court correctly granted its motion for partial summary judgment and enforced the exculpatory clause as written.
A review of the Wadicks’ original petition supports the trial court’s finding that Mr. Wadick’s claims arising out of the installation contract are based solely in contract. The duties allegedly breached by General arise solely out of contractual obligations. Mentz, supra. All of Mr. Wadick’s claims under the installation contract stem from General’s contractual duty to properly and timely install the HVAC components. “There is no showing of a breach of a general duty. The only allegations in the petition are for breaches of duty confected by contract.” Everett, 08-2270 at p. 6,13 So.3d at 620. Nonetheless, contrary to General’s contention, which the trial court accepted, the finding that Mr. Wadick’s claims sound solely in contract is not dispositive of the issue of whether La. C.C. art. 2004 applies.
Neither of the two separate parts of La. C.C. art. 2004 is limited to tort claims. The first part of the article addresses “fault” and provides that “[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.” La. C.C. art. 2004. Although “fault” is generally associated with tort *598 liability,[12] the Louisiana Supreme Court 118has explained that “ ‘fault’ is a broader and more comprehensive term than ‘negligence.’ ” Kent v. Gulf States Utilities Co., 418 So.2d 493, 496 (La.1982).
Under Louisiana law, liability, in both the contractual and delictual context, is “incurred because of fault.” Saul Litvinoff, Stipulations As To Liability And As To Damages, 52 Tul. L.Rev. 258, 274 (1978) (“Litvinoff ”).[13] Professor Litvinoff suggested that the Louisiana Legislature, in enacting La. C.C. art.2004, prohibit only clauses that exclude or limit liability for intentional fault and physical injury. Id., 52 Tul. L.Rev. at 298. However, the Louisiana Legislature, apparently following the French jurisprudence, opted to additionally prohibit clauses that exclude or limit liability for “gross fault.” See Id., 52 Tul.L.Rev. at 298.
Former La. C.C. art. 3556(13) defined the concept of gross fault as “that which proceeds from inexcusable negligence or ignorance; it is considered as nearly equal to fraud.” This concept of gross fault, which the Legislature incorporated into La. C.C. art. 2004, includes both contractual and delictual fault. See Litvinoff, 52 Tul. L.Rev. at 279 (noting that “[t]he French jurisprudence has asserted that gross fault, either contractual or delictual, because it can be assimilated to fraud, makes the wrongdoer liable for the full reparation of the damage caused, a liability of which he may not be relieved by any clause.”) Gross fault thus includes not only gross negligence, but also bad faith breach of contract or fraud. See La. C.C. art. 2004, cmt. (a) (noting that “such clauses are against | ^public policy because the overriding principle of good faith would be destroyed if it were possible to contract away for liability for fraud”); see also La. C.C. art. 1997, cmt. (b) (noting that “[a]n obligor is in bad faith if he intentionally and maliciously fails to perform his obligation”).
Like the first part of La. C.C. art. 2004, the application of the second part of this article is not limited to tort claims. The second part of this article nullifies any clause excluding or limiting liability “for causing physical injury.” La. C.C. art. 2004; see Litvinoff, 52 Tul. L.Rev. at 281 (noting that “[wjhere injury to the physical integrity of persons is involved, a clause excluding liability for nonperformance is invalid, even when the damage is the consequence of slight fault[, which former La. C.C. art. 3556(13) defined as that want of care which a prudent man usually takes of his business].”) As the Louisiana Supreme Court has noted, La. C.C. art. 2004 applies “when a party to the contract relinquishes future rights of action arising from his or her physical injury.” Daigle v. Clemco Industries, 613 So.2d 619, 623 (La.1993) (citing Ramirez v. Fair Grounds Corp., 575 So.2d 811 (La.1991)).
In this case, the trial court based its finding that neither part of La. C.C. *599 art. 2004 applied solely on its determination that Mr. Wadick’s claims under the installment contract sounded in contract and that the Wadicks had failed to plead a gross negligence claim. The term “gross fault” in the first part of La. C.C. art. 2004, however, encompasses not only gross negligence, but also bad faith breach of contract or fraud. As General acknowledges, the Wadicks’ original petition expressly averred that it “breached its contract in ‘bad faith.’ ” Their original petition also included a fraud claim. To the extent the exculpatory provision | ^absolves General from liability for such bad faith breach of contract and fraud claims, it is invalid under La. C.C. art. 2004.
The exculpatory provision is also invalid under La. C.C. art. 2004 to the extent it excludes General’s liability for physical injuries arising out of the breach of the installment contract. As a general rule, physical injuries are not recoverable in a breach of contract case; however, there are exceptions. See, e.g., La. C.C. art. 1998 (providing for the recovery of nonpe-cuniary damages for breach of contract in limited circumstances). Regardless, to the extent the exclusionary provision absolves General of liability for such physical injury claims it is invalid.
Although we find merit to the Wadicks’ contention that the exclusionary provision violates both parts of La. C.C. art. 2004, we reject their contention that this finding dictates that the entire exculpatory provision be declared invalid.[14] As the Louisiana Supreme Court has held, “[i]t is not necessary that the entire agreement containing the stipulation against public order or policy be declared null.” Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353, 1358 (La.1976); see also Litvinoff, 52 Tul. L.Rev. at 289 (noting that “[w]hen null, a clause excluding liability is regarded as not written; the contract otherwise stands.”) The Supreme Court further held that “an immoral or illegal condition within a contract annuls the entire agreement only ‘to the extent to which the agreement depends on it.’ ” Morse, 344 So.2d at 1358 (quoting Planiol, Civil Law Treatise, Volume 2, Section 1269, p. 720). Thus, “[n]ullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, |21it can be presumed that the contract would not have been made without the null provision.” La. C.C. art. 2034.
Applying these principles in the context of agreements not to compete, the jurisprudence has held that “[e]ourts are free to recognize, by interpretation of the will of the parties, that the provision inserted in the agreement is only an accessory clause to which the agreement was not subject for its existence. In that case, the offending provision is deleted and the remainder of the agreement stands.” Henderson Implement Co., Inc. v. Langley, 97-1197, pp. 5-6 (La.App. 3 Cir. 2/4/98), 707 So.2d 482, 486. Applying these principles in the context of the instant case, we find it possible to delete from the exculpatory provision the offending claims — claims for physical injury or claims for property damages as a result of the bad faith breach of contract or fraud— and to allow the remainder of the exculpatory provision to stand — claims for property damages as a result of the good faith breach of the installment contract.
Summarizing, we hold that the exclusionary provision on the reverse side of the proposal precludes neither Mr. Wad-ick’s claims for physical injury nor his *600 claims for property damages as a result of the bad faith breach of contract or fraud. Stated otherwise, the exclusionary clause precludes only Mr. Wadick’s claims for property damages as a result of the good faith breach of the installment contract. Given it based its ruling on the premise that La. C.C. art.2004 applies only to tort claims, the trial court did not reach the issues of whether there was any evidence of General’s bad faith breach of contract or fraud and whether Mr. Wadick has a contractual claim for physical injury. As noted, the exculpatory clause would not preclude such claims. We thus find it appropriate to allow the trial court to decide [¡.¡¡those issues on remand. In so finding, we express no opinion on Mr. Wadicks’ ability to recover on such claims.

DECREE

For the foregoing reasons, we convert the Wadicks’ appeal of the trial court’s judgment denying their motion for leave to amend to an application for supervisory writ, grant the writ, and deny relief. As to the trial court’s judgment granting General’s partial motion for summary judgment, we reverse the judgment to the extent it finds the exculpatory provision in the installment contract enforceable to bar Mr. Wadick’s claims for physical injuries and claims for bad faith breach of contract or fraud. In all other respect, we affirm the trial court’s judgment granting the motion for partial summary judgment and enforcing the exculpatory provision; and we remand for further proceedings consistent with the views expressed in this opinion.
APPEAL OF DENIAL OF MOTION FOR LEAVE TO AMEND CONVERTED TO SUPERVISORY WRIT; WRIT CONSIDERED; RELIEF DENIED; APPEAL OF DENIAL OF PARTIAL MOTION FOR SUMMARY JUDGMENT REVERSED IN PART; AFFIRMED IN PART, AND REMANDED.

. As General points out, it provided the Wad-icks with the option of having it perform two scopes of work. They accepted one of the options, but rejected the other option.

. Both insurers filed motions for summary judgment on coverage issues, which were denied, at least in part. This court denied both insurers’ separate writ applications. Wadick v. General Heating & Air Conditioning, LLC, 13-0531 (La.App. 4 Cir. 6/3/13) (unpub.); Wadick v. General Heating & Air Conditioning, LLC, 13-1190 (La.App. 4 Cir. 9/26/13) (unpub.).

. Alleging that the maintenance contracts contained similar mold exclusions, General initially included the maintenance contracts in its motion for summary judgment. Citing a clerical error, General withdrew its motion for summary judgment with respect to the maintenance contracts. Only the exculpatory provision in the installment contract is at issue.

. La. C.C. art.2004 provides:
Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.
Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party.

.The trial court denied the Wadieks’ motion for partial summary judgment on the issues of whether General breached its installation and maintenance contracts and whether General's alleged multiple breaches of the installation and maintenance contracts constituted gross negligence.

. On July 1, 2013, the Wadicks filed an ex parte motion for leave to file a third amended and supplemental petition. On July 17, 2013, the trial court granted their ex parte motion. In response, General filed a motion for rehearing, which the trial court granted. For ease of discussion, we refer to the trial court’s ruling as a denial of the Wadicks’ motion for leave to amend.

. See Carter v. Safeco Ins. Co., 435 So.2d 1076, 1081, n. 6 (La.App. 1st Cir.1983) (holding that the trial court’s refusal to allow the plaintiff to amend his petition is a non-appeal-able interlocutory judgment; however, since the defendants neither filed a motion to dismiss nor objected, the appellate court addressed the issue on appeal.)

. A supplemental pleading is different from an amended pleading. An amended pleading involves matters that occurred before the original petition was filed and that were either overlooked or unknown to the original pleader; whereas, a supplemental pleading addresses issues or causes of action that have arisen since the original petition was filed. Adema v. Elliott, 223 So.2d 464, 467 (La.App. 4th Cir. 1969). Supplemental pleadings are governed by La. C.C.P. art. 1155. Although labeled a supplemental and amended petition, the Wadicks' motion for leave to amend seeks to file an amended, not a supplemental, petition.

. The record on appeal is devoid of any pretrial order entered by the trial court addressing amendment or supplementation of pleadings.

. In a footnote in their appellant brief, the Wadicks additionally argue, as they did before the trial court, that the exculpatory clause is null for other reasons. The footnote reads as follows: "Even if the exclusionary provision were [sic] not absolutely null, the Wadicks continue to maintain that General failed to sufficiently alert James Wadick to the tiny fine print language on the reverse side in order to constitute a valid waiver [of] Mr. Wadick's rights. Furthermore, the Wadicks maintain that the overwhelming evidence of gross negligence further prevents General from enforcing the exclusionary language on the reverse side of the Installation Contract.” The Wadicks, however, failed to brief those other issues. For this reason, we decline to consider those other issues. See Tsegaye v. City of New Orleans, 13-1412, pp. 8-9 (La.App. 4 Cir. 4/16/14), 140 So.3d 202, 204 (citing Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4), which provides that “The court may consider as abandoned any assignment of error or issue for review which has not been briefed” and deeming abandoned the issue of spoliation since it was "neither an assignment of error or briefed in Mr. Tsegaye’s appellate brief”); see also FMC Enterprises, L.L.C. v. Prytania-St. Mary Condominiums Ass'n, Inc., 12-1634, pp. 22-23 (La.App. 4 Cir. 5/15/13), 117 So.3d 217, 231 (finding abandoned and declining to address an assignment error that was only referenced in the brief with the following sentence: "the parties did not object to the lower court's dismissal of FMC’s suit with prejudice as a means to obtain a final judgment in the matter so as to allow FMC to file its suspensive appeal regarding the lower court's rulings in the matter.”)

. A third issue was presented in Ostrowiecki that is not relevant to this case.

. See Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law, § 1-3 (1996) (noting that ''[a]ll theories of recovery, or categories of tort liability, are ‘fault’ in Louisiana” and discussing a "fault line” of tort liability).

. As the federal court noted in Occidental Chemical Corp. v. Elliott Turbomachinery Co., Inc., 84 F.3d 172, 177 (5th Cir.1996), "insights regarding article 2004 surface in the writings of Professor Litvinoff, who was the inspiration for the provision and also the reporter for the Louisiana Law Institute Committee which revised Louisiana contract law. In particular, we may suppose the purpose of article 2004 from the law review article in which Professor Litvinoff introduces a proposed version of article 2004 amid a thorough discussion of Louisiana public policy and legal history.” Id. (citing Saul Litvinoff, Stipulations As To Liability And As To Damages, 52 Tul. L.Rev. 258 (1978)).

. To the extent the federal court’s holding in Ostrowiecki, supra, is inconsistent with our holding that the entire exclusionary provision is not invalid, we decline to follow it.