# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20532

United States Court of Appeals
Fifth Circuit

**FILED**
June 18, 2019

Lyle W. Cayce
Clerk

PETROBRAS AMERICA INCORPORATED,

> Plaintiff - Appellant

v.

VICINAY CADENAS, S.A.,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-888

Before HAYNES, GRAVES, and HO, Circuit Judges.

PER CURIAM:[*]

Petrobras America, Inc. and Vicinay Cadenas, S.A. return to our court in a suit over an allegedly bad chain made by Vicinay. The district court granted summary judgment against Petrobras because Vicinay invoked a contractual release of claims and waiver of losses. Petrobras argued that the release and waiver were invalid under a Louisiana statute that invalidates prospective releases of claims based on "intentional or gross fault." The district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20532

concluded the statute could not save Petrobras's claims because it did not require Petrobras to prove "intentional or gross fault."  But, in this context, Louisiana courts have consistently looked at the underlying facts of a claim, not the form of the cause of action.  We thus REVERSE and REMAND.

## I.  Background

This case is about a defect in a chain which serves as a critical component to an offshore oil production system.  The plaintiff, Petrobras, is an oil and gas production company.  The defendant, Vicinay, is a manufacturer of marine chains for use in oil and gas production activities.

Petrobras entered into an Engineering, Procurement, Construction and Installation Contract ("EPCI Contract"), with Technip USA, Inc. ("Technip") for Technip to construct a free-standing hybrid riser system ("FSHR" or "riser system") that would move crude oil from wellheads on the ocean's floor to a floating production storage and offloading facility at the ocean's surface. Technip then contracted with Vicinay for Vicinay to engineer and manufacture five tether chains that would connect the riser system to buoyancy cans.  The buoyancy cans are meant to keep the riser system from kinking over, thereby ensuring the unobstructed flow of crude oil from the ocean's floor to the facility above.

The EPCI Contract contains two provisions relevant to this case—a release provision and a waiver provision.  The release provided that Petrobras would release "all [c]laims" against Technip and its subcontractors. Specifically, Petrobras agreed to:

> release, defend, hold harmless and indemnify Contractor Group from and against any and all Claims, Losses, or Expenses for personal injury, illness, death or for loss or damage to property of Company Group brought by any member of Company Group directly or indirectly arising out [of] this Contract . . . regardless whether such claims, losses, or

2

> expenses are actually or allegedly the result of the sole or concurrent negligence, strict liability, negligence per se, product defect, willful and wanton conduct or other fault of contractor group, whether or not pre existing this contract, the violation of any municipal, state or federal statute, or the unseaworthiness of any vessel, or the unairworthiness of any aircraft.

EPCI § 9.1 (all capitalization of latter clause omitted).

The EPCI waiver provides that each party waives any claim for its own loss against the other party. In full, the waiver states:

> each party hereby waives any claim for its own consequential loss (as defined below) against the other party (or the other party's group) which arises out of or in connection with this contract, howsoever or by whomsoever such consequential loss may be caused, whether due to the neglect or fault, in whole or in part, of any of the parties or their respective groups, or any other persons or otherwise, and each party hereby releases each other party (and such other party's group) from any liability for consequential loss of the releasing party.

EPCI § 9.8.1 (all capitalization omitted).

After Technip's construction, Petrobras discovered that one of the buoyancy cans had broken free from its connection to the riser system, and a portion of the riser system and a tether chain had fallen to the ocean's floor. Petrobras alleges that a link in one of the tether chains failed, because Vicinay made an unauthorized and defective repair weld to one of the links in the chain.

Earlier in this case, a previous panel of our court considered whether the Outer Continental Shelf Lands Act ("OCSLA") required that the dispute be governed by Louisiana law or maritime law. *Petrobras America, Inc. v. Vicinay Cadenas, S.A. (Petrobras I)*, 815 F.3d 211 (5th Cir. 2016). The panel held "that the choice of law prescribed by OCSLA is statutorily mandated," and "that the

applicable law is that of the adjacent state of Louisiana." *Id.* at 213 (citing 43 U.S.C. § 1333(a)(2)). Accordingly, the panel remanded the case back to the district court with instructions to proceed under Louisiana law. *Id.* at 218.

Petrobras filed an amended complaint after *Petrobras I*. Petrobras asserted six claims under Louisiana law: (1) products liability based on the Louisiana Products Liability Act ("LPLA"); (2) redhibition; (3) negligence; (4) gross negligence; (5) failure to warn; and, (6) fraud/fraudulent inducement. The district court dismissed all but the LPLA and redhibition claims, because the LPLA subsumed all the other claims. Petrobras has not appealed the dismissal of those claims.

Vicinay moved for summary judgment on the remaining two claims, asserting an affirmative defense of release, based on §§ 9.1 and 9.8.1 of the EPCI Contract. Petrobras countered that the releases were unenforceable under Louisiana law, which provides that "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." LA. CIV. CODE ART. 2004. The district court concluded that the release and waiver provisions applied to and were enforceable against Petrobras's remaining claims. It determined that the release and waiver provisions were void *only* to the extent that the provisions released Vicinay of reckless conduct—not null in their entirety. Because neither the LPLA nor redhibition included an element of recklessness or intent, the district court concluded that Article 2004 did not invalidate the release and waiver. Petrobras now appeals.

## II.    Standards of Review

We review de novo a district court's grant of summary judgment, applying the same standard as the district court. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)). When deciding issues of state law,

No. 18-20532

we must consider how the state's highest court would decide those issues.  *See Guilbeau v. Hess Corp.*, 854 F.3d 310, 311 & n.4 (5th Cir. 2017).

## III.    Discussion

We first resolve what law applies to this dispute and then turn to the district court's conclusion that Petrobras could not use Article 2004 to invalidate the EPCI Contract's waiver and release of its LPLA and redhibition claims.

## A. Choice of Law

Vicinay argues that the application and validity of the EPCI Contract's waiver and release are governed by Texas, not Louisiana, law.  We reject Vicinay's argument and apply Louisiana law.

Vicinay acknowledges that we previously held that OCSLA required Petrobras's claims to be governed by Louisiana law.  *See Petrobras I*, 815 F.3d at 218.  We have interpreted OCSLA to require the laws of an "adjacent State" to apply to controversies occurring at an OCSLA situs so long as the claims are consistent with other federal law and are not maritime claims.  *See id.* at 214, 216.  Though Vicinay previously argued that Petrobras's claims were maritime claims, it did not argue that Petrobras's tort claims occurred anywhere but at an OCSLA situs.  It does not claim otherwise now nor does it offer any of the traditional arguments for supplanting law of the case.  *Deutsche Bank Nat'l Trust Co. v. Burke*, 902 F.3d 548, 551 (5th Cir. 2018) (describing the three limited circumstances where a second panel can re-examine a prior panel's holding).

Instead, Vicinay argues that though Petrobras's claims occurred at an OCSLA situs, a separate analysis should be done for its affirmative defense based on the EPCI Contract.  It cites our decision in *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc), for the

5

No. 18-20532

proposition that any "contractual dispute" in an OCLSA case must be resolved by the "focus-of-the-contract test." *See id.* at 781.

*Grand Isle* involved the question of the determining the situs of the controversy to determine whether OCSLA law applied. Here, we have already decided that Louisiana law applies. *Petrobras I*, 815 F.3d at 218. In *Grand Isle*, the claim at issue was an indemnity claim between two parties, neither of whom had a tort claim against the other. *Id.* at 782–83. The case was purely a contractual one, even if the indemnity suit was spurred by a tort claim by a third party. *Id.* Vicinay raises a contractual provision as an affirmative defense to Petrobras's tort claim. Usually, the same law that governs a tort claim will govern what defenses may be asserted. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 161 (AM. LAW. INST. 1971). Vicinay has not articulated any reason why that general principle would not apply in this case.

Nothing in the text of OCSLA indicates that the applicable law for defenses should be analyzed separately from the applicable law for a claim. As the statute puts it, the country's laws and authority "extend[] to the subsoil and seabed of the outer Continental Shelf," as well as certain man-made structures attached to them, "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State." 43 U.S.C. § 1333(a)(1). The law that applies in that territory is the law of the "adjacent State," so long as "they are applicable and not inconsistent . . . with other Federal laws." *Id.* § 1333(a)(2). OCSLA thus creates zones where any "controversy," *see Grand Isle*, 589 F.3d at 784, that arises must be adjudicated under the laws of the adjacent state, even when the parties privately contract for different law to apply and even when the adjacent state's choice-of-law principles would incorporate a different body of law. *See Petrobras I*, 815 F.3d at 215. The statute does not create exceptions for different parts of a controversy to be governed by different bodies of law.

6

No. 18-20532

The district court correctly followed our instructions to consider the case under Louisiana law, and we continue to follow our own instructions under law of the case. *See Bott v. Am. Hydrocarbon Corp.*, 458 F.2d 229, 231 n.2 (5th Cir. 1972) (concluding that a choice-of-law decision in a previous appeal in the same suit is law of the case).

## B. Enforceability of Release and Waiver

Petrobras argues that the district court erred in its interpretation of Article 2004, which Petrobras cited to rebut Vicinay's affirmative defense of release and waiver under the EPCI Contract. We agree and conclude that summary judgment was inappropriate on that ground.

Article 2004 restricts private parties' ability to prospectively waive or release certain claims. It states: "Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." LA. CIV. CODE ART. 2004. It includes a similar provision for contractual clauses that absolve defendants of liability for any personal injuries, which is relevant for cases discussed later but is not applicable on the facts of this case. *Id.*

The district court decided that Article 2004 could not be invoked against the EPCI Contract's release and waiver. It reasoned that though Article 2004 would make the release and waiver "unenforceable as to claims of recklessness, the LPLA precludes Petrobras from asserting such a claim." The district court also held, without any detailed analysis, that Article 2004 could not be invoked to save Petrobras's redhibition claim. Vicinay defends the district court's decision on appeal, arguing that "Article 2004 invalidates contractual provisions only to the extent there is a ***cause of action*** for intentional or gross fault, without regard to whether the alleged underlying conduct involves intentional or gross fault."

7

No. 18-20532

But Louisiana courts have never applied Article 2004 only to causes of action that include an element of intentional or gross fault. Quite the opposite: They have looked at the underlying allegations and facts and applied Article 2004 even where the cause of action did not include any such element. For instance, in *Ramirez v. Fair Grounds Corp.*, a plaintiff sued a premises owner under two strict liability statutes, neither of which required intent, gross negligence, or physical injury. *See* 575 So. 2d 811, 812 (La. 1991). But because the plaintiff had suffered a physical injury, the Supreme Court of Louisiana concluded that Article 2004 nullified application of a contractual release. *Id.* at 813. The analysis was not focused on the elements of the claim; it was focused on the nature of the allegations. *See also Daigle v. Clemco Indus.*, 613 So. 2d 619, 623 (La. 1993) ("The present case fits neither category because the surviving spouse and children did not *sustain physical injury* and the defendants were *not alleged to have been intentionally or grossly at fault.*" (emphasis added)); *Williams v. Kushner*, 549 So. 2d 294, 310 (La. 1989) ("Where physical injury *has occurred,* a prior agreement cannot act to restrict the measure of damages." (emphasis added)). Similarly, a Louisiana court of appeals examined whether a breach of contract amounted to gross negligence—and thus triggered Article 2004—even though a cause of action for breach of contract does not require gross negligence. *See Tudor Chateau Creole Apartments P'ship v. D.A. Exterminating Co.*, 691 So. 2d 1259, 1262 (La. Ct. App. 1997).[1] Even the primary case the district court relied on and Vicinay cites on appeal, *Wadick v. Gen. Heating & Air Conditioning, LLC*, uses this mode of reasoning. *See* 145 So. 3d 586, 599 (La. Ct. App. 2014) (reversing a

---

[1] That court also determined that the defendant's actions were not intentional conduct. *See Tudor Chateau*, 691 So. 2d at 1262. So it could not be argued that the plaintiff's claim there could have proceeded under a "bad faith" breach of contract, which might arguably include an element of intentional fault.

trial court and concluding that Article 2004 would not invalidate a prospective release of a breach of contract claim leading to physical injuries even though it would invalidate it for the same claim leading only to property damage).[2] Another Louisiana court of appeals concluded that Article 2004 could invalidate a prospective release when a plaintiff sued for redhibition—a result directly contrary to the district court's order. *See Cameron v. Bruce*, 981 So. 2d 204, 205, 208 (La. Ct. App. 2008). The district court's and Vicinay's elemental approach to Article 2004 is thus inconsistent with how every Louisiana court has approached the issue.

In addition to being inconsistent with how Louisiana courts have handled Article 2004, the proposed elemental approach leads to strange results. The most obvious is that it would make Article 2004 irrelevant except in cases of fraud and the rarest of other cases. *See* LA. CIV. CODE. ART. 1953. That is because nearly all Louisiana's causes of action do not require a plaintiff to prove any element that amounts to intentional or gross fault. The district court supposed that Article 2004 would have invalidated the release and waiver if Petrobras could have asserted a claim of "recklessness." But Louisiana has no such cause of action. Instead, it has a general negligence statute that does not require a plaintiff to prove intentional or gross fault, nor must the plaintiff necessarily prove personal injury. *See* LA. CIV. CODE ART. 2315. In some peculiar circumstances like the production of child pornography or driving while intoxicated, a plaintiff must prove the defendant acted with "wanton or reckless disregard" to receive exemplary damages. *See* LA. CIV. CODE ARTS. 2315.3, 2315.4. But it is doubtful even those infrequently invoked

---

[2] Vicinay's counsel misstates the holding of *Wadick*, asserting that the court "affirm[ed] summary judgment as to ordinary breach." But *Wadick* remanded on the ordinary breach claims as they related to physical injuries stemming from the breach of contract. *See* 145 So. 3d at 599–600.

statutes would fall within the district court's approach to Article 2004; those statutes merely enhance damages and are not causes of actions unto themselves.[3] Thus, under the approach advocated by Vicinay, Article 2004 would be a nullity in nearly every case that was not for fraud. Specifically, it would never apply to manufacturers of products, given the singularity of the LPLA as a cause of action.

The district court's decision to apply the proposed elemental approach stemmed, in part, from confusion about what the LPLA covers. For Petrobras to prove that Vicinay violated the LPLA, it does not have to show that Vicinay acted with intentional or gross fault. *See* LA. STAT. ANN. § 9:2800.54(D). Instead, it must prove one of the statutorily enumerated theories, such as an unreasonably dangerous design or lack of conformance to an express warranty. *See* LA. STAT. ANN. § 9:2800.54(B). These theories are similar to, but distinct from, traditional civil law causes of action. Plaintiffs cannot, however, choose to sue under other causes of action because the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." *See* LA. STAT. ANN. § 9:2800.52. We have affirmed dismissal of product liability claims that try use other causes of action instead of the LPLA. *See, e.g.*, *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997).

But—and this is where Vicinay's argument goes awry—plaintiffs can still sue under the LPLA for conduct that would be considered intentional, grossly negligent, or reckless, or that would violate other causes of action. The LPLA is a floor, not a ceiling; Plaintiffs do not have to prove defendants acted

---

[3] Similarly, intentional or gross fault sometimes arise in obscure immunity statutes. *See, e.g.*, LA. STAT. ANN. § 4:173.1 (providing immunity for those engaged in raising thoroughbred horses except when damages are caused by "gross negligence"); LA. STAT. ANN. § 15:546 (providing immunity for state officials who disclose sex offender information except when they act "with gross negligence or in bad faith"). But those statutes are generally invoked by defendants, not by plaintiffs as a cause of action.

recklessly to establish liability under the LPLA, but they are not barred from proving the same so long as they meet the statutory requirements. *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 262 & n.2 (5th Cir. 2002). Defendants do not somehow escape liability under the LPLA as their violations become more egregious. All products liability claims, no matter how minor or major, are covered by the LPLA.

The district court concluded the opposite, citing another district court for the proposition that "the LPLA does not allow the plaintiff to recover for willful, wanton, and reckless conduct." *Ingram v. Bayer Corp.*, No. 2-352, 2002 WL 1163613, at *2 (E.D. La. May 30, 2002). That statement misdescribes the "exclusive theories" rule under the LPLA, construing it to be about defendants' "conduct," when it is really about plaintiffs' minimum burden to establish liability. *See Stahl*, 283 F.3d at 262 & n.2.

From this faulty premise, the district court implicitly reasoned that since an LPLA claim does not have to feature intentional or gross fault, Article 2004—which applies when intentional or gross fault is present—would not be triggered.[4] But, as discussed above, that is incorrect; the LPLA can cover such conduct.

Because the LPLA covers such conduct and Article 2004 may be invoked against it, the district court erred. Walking this situation through step-by-step—plaintiff's claim followed by defendant's defense followed by plaintiff's exception to the defense—explains how Petrobras's claims, Vicinay's defense, and Article 2004 work. Petrobras bears the burden of proving redhibitory claim or a violation of the LPLA, focusing on just the elements of that statute. If Petrobras proves a redhibitory claim or a violation of the LPLA, Vicinay can

---

[4] The district court provided no similar justification for why it concluded the redhibition claim could not survive.

then prove its contractual defense under the ECPI. If nothing else happens, then Vicinay would prevail based upon its affirmative defense. But if Petrobras could produce evidence in response to the affirmative defense proving that Vicinay acted with intentional or gross fault in its violation of the LPLA or redhibition, Petrobras would overcome Vicinay's affirmative defense under the contract. Then, so long as Petrobras has proved a redhibitory claim or a violation of the LPLA's terms, Petrobras would prevail. The district court should not assume that Vicinay cannot be liable under the LPLA if it acted with intentional or gross fault, nor should it look to the elements of the LPLA or redhibition to determine whether Article 2004 applies.

## IV. Conclusion

We REVERSE the district court's conclusion that Article 2004 cannot be used to invalidate the EPCI Contract's release and waiver as applied to Petrobras's LPLA and redhibition claims. We REMAND for further proceedings consistent with this opinion.